UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BENJAMIN GARROW, *a/k/a Benjaman Garrow*,

                                    Petitioner,

                                                          9:18-CV-981
v.                                                        (MAD/TWD)

SUPERINTENDENT,

                                    Respondent.
_____

APPEARANCES:                              OF COUNSEL:

BENJAMIN GARROW
Petitioner, *pro se*
12-A-5393
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

HON. LETITIA A. JAMES                     LISA E. FLEISCHMAN, Esq.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Respondent
28 Liberty Street
New York, New York 10005

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

Benjamin Garrow ("Garrow" or "Petitioner") filed a petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, to challenge his 2012 conviction following a guilty plea in State of

New York Supreme Court, County of Clinton (the "Trial Court") of predatory sexual assault

against a child under the age of thirteen.  (Dkt. No. 1 at 1.[1])  Petitioner asserts he is entitled to

---
[1]  Citations to page numbers in the filings refer to the pagination CM/ECF automatically
generates.

relief on the following grounds: (1) the victim was thirteen years old at the time of the crime; (2) the presiding judge was biased because he concluded Petitioner committed rape before he was indicted; (3) DNA evidence was improperly obtained; and (4) the District Attorney obtained the victim's statement without her parent's consent. *Id*. at 5-16; *see also* Dkt. No. 25. The Superintendent, through the State of New York, (the "State" or "Respondent") opposes Garrow's petition. (Dkt. Nos. 13, 15.) For the reasons set forth below, this Court recommends denying Petitioner's request for a writ of habeas corpus in its entirety.

## I.    BACKGROUND

On October 1, 2012, Petitioner pled guilty to predatory sexual assault against a child. (*See generally*, Dkt. No. 16.[2]) Judge Timothy J. Lawliss presided over Petitioner's plea allocution and Petitioner was represented by counsel. *Id*. at 1. During his allocution, Judge Lawliss carefully explained the result of his guilty plea and the rights he would waive as a result. *Id*. at 4-12. Petitioner then pled guilty to predatory sexual assault against a child and admitted that "on or about and in between November 1, 2008 and December 31, 2008," he raped his step-daughter ("Jane Doe") who was under the age of thirteen at the time of the rape. *Id*. at 13-14. After the Trial Court accepted his plea, Petitioner then executed a waiver of his right to appeal. *Id*. at 15-16. On November 26, 2012, Petitioner was sentenced to twenty years to life in prison. (Dkt. No. 16-2 at 4-5.)

In a *pro se* motion, dated February 16, 2015, Petitioner moved to set aside the sentence pursuant to N.Y. C.P.L. § 440.20, claiming that his sentence of twenty years to life was illegal because the victim was thirteen years of age, not twelve or younger. (Dkt. No. 16-3 at 3-4.) The

---

[2]  The Court will cite to the Dkt. No. associated with the state court records and, where relevant, will cite to the page number the CM/ECF system automatically generates.

Trial Court denied the motion and explained that Petitioner had filed a N.Y. C.P.L. § 440.20 motion with the Court, but had apparently filed a N.Y. C.P.L. § 440.10 motion with the People. *Id.* at 10.  In other words, Petitioner attempted to file both motions but served only the N.Y. C.P.L. § 440.20 motion with the Trial Court and only the N.Y. C.P.L. § 440.10 motion with the People.  The Trial Court declined to consider the substance of his unfiled N.Y. C.P.L. § 440.10 motion because it never received Petitioner's papers.  *Id.*  In his putative N.Y. C.P.L. § 440.10 motion, Petitioner argued that the age of the victim was wrong, the judge was biased, and that his counsel was ineffective for failing to move for Judge Lawliss's recusal.  *Id.* at 16; 26.

In a counseled motion to vacate the judgment, dated January 16, 2016, Petitioner claimed that the trial judge was biased because he made a statement in a Family Court proceeding that Petitioner had "raped" the victim and that his counsel was ineffective because she did not object to the trial judge presiding over the criminal action.  The Trial Court denied this motion.  *Id.* at 103-07.  In its Order, Judge Lawliss explained that he conducted a dispositional hearing regarding the neglect petition against Jane Doe's mother and a permanency hearing under the Family Court Act.  *Id.* at 103-04.  In that hearing, Judge Lawliss found that Petitioner raped Jane Doe and in a separate hearing found that he was the father of Jane Doe's twins who were born when Jane Doe was thirteen years old.  *Id.*

Judge Lawliss rejected the claim that he was biased and should have *sua sponte* recused himself of handling the criminal proceedings.  *Id.* 105-07.  To that end, Judge Lawliss found that he was "duty bound to adjudicate issues of fact" in the Family Court proceedings and that findings in that proceeding were made in fulfillment of his judicial duty.  *Id.* at 105.  According to Judge Lawliss, the finding that Petitioner raped Jane Doe was made to resolve one of the central allegations in the neglect case against Petitioner.  *Id.*  The Court understood the

difference between the standards of evidence in the Family Court matter and in the criminal case and that his finding in Family Court did not necessarily mean Petitioner should be convicted of rape in a criminal proceeding. *Id.* Judge Lawliss, therefore, found recusal was not warranted. *Id.* at 105-07.

In a counseled brief to the Appellate Division, Third Department ("Third Department"), Petitioner claimed: (1) the trial judge erred in not recusing himself *sua sponte* from presiding over his case; (2) trial counsel was ineffective for failing to move to have the trial judge recused; and (3) his waiver of his right to appeal was not knowing, intelligent, and voluntary. *Id.* at 118-131.

The Third Department rejected Petitioner's claims both on direct appeal and on the appeal of his N.Y. C.P.L. § 440.10 motion. *See People v. Garrow*, 148 A.D.3d 1459 (2017). With respect to the direct appeal, the Third Department found that his claim that Judge Lawliss should have recused himself was unpreserved for appellate review because he failed to move for that relief in the trial court. *Id.* at 1460. The Third Department also found that such a claim was encompassed in his waiver of his right to appeal. *Id.* The court further found Petitioner's claim that his counsel was ineffective for failing to move for recusal was similarly unpreserved for appellate review because it was not raised before the trial court. *Id.*

With respect to his challenge to the Trial Court's denial of his N.Y. C.P.L. § 440.10 motion, the Third Department recognized that "[w]here, as here, the 'basis for recusal does not involve a mandatory statutory disqualification pursuant to Judiciary Law § 14, the trial judge was the sole arbiter regarding recusal.'" *Id.* at 1460 (citation omitted). The Third Department further found that "[t]he record before [it] does not support the conclusion that Supreme Court's dual role in both the neglect proceeding and this criminal matter, which was entirely appropriate

under the rules governing the Integrated Domestic Violence part of Supreme Court, was improper in any respect." *Id*. at 1460-61.  It therefore rejected any argument that Judge Lawliss should have *sua sponte* recused himself.

Additionally, the Third Department held that Petitioner "was not denied meaningful representation due to trial counsel's failure to request that Supreme Court recuse itself.  Given the strong evidence of guilt and beneficial plea offer, as well as the unlikelihood such a request would have been granted, [Petitioner did] not demonstrate[] 'the absence of strategic or other legitimate explanations' for counsel's decision not to seek recusal." *Id*. at 1461 (citation omitted).

Petitioner then filed a counseled leave application to the New York Court of Appeals raising the following issue: "Whether the rules established for Integrated Domestic Violence Court violate a defendant's right to a fair and impartial judge, and his right to a presumption of innocence, where a judge that has previously made a finding that the defendant raped the victim, by clear and convincing evidence, in the Family Court portion of the proceeding can subsequently in the criminal action afford the defendant the presumption of innocence." (Dkt. No. 16-3 at 281.)  On May 25, 2017, his application was denied.  *People v. Garrow*, 29 N.Y.3d 1031 (2017).

As noted above, Petitioner now asserts he is entitled to relief from his conviction on the following grounds: (1) the victim was thirteen years old at the time of the crime; (2) the trial court concluded he committed rape before he was indicted; (3) DNA evidence was improperly obtained; and (4) the District Attorney obtained the victim's statement without the consent of her parents.  (Dkt. No. 1 at 5-16; *see also* Dkt. No. 25.)

In response to the petition, Respondent asserts Petitioner's arguments regarding the age of the victim, the DNA evidence, and the victim's statement are all unexhausted, forfeited by his guilty plea, and meritless.  (Dkt. No. 15 at 10-13.)  Furthermore, Respondent contends Petitioner's claim that the Trial Court was biased is forfeited by his guilty plea, barred on an independent state ground, and without merit.  *Id*. at 14-18.

## II.   DISCUSSION

### A.    Petitioner's Unexhausted Claims

A prerequisite to habeas relief under section 2254 is the exhaustion of all available state remedies.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."); 28 U.S.C. § 2254(b)(1)(A) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(1)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"). The exhaustion requirement seeks to promote considerations of comity and respect between the federal and state judicial systems.  *See Davila v. Davis*, ─── U.S. ────, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To meet the exhaustion requirement, a petitioner must present the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it, to give state courts a full and fair "opportunity to pass upon and correct

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam ) (internal quotation marks and citation omitted).  A federal claim has been "fairly present[ed] in each appropriate state court, including a state supreme court with powers of discretionary review," if it "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal parentheses and quotation marks omitted).  A petitioner "does not fairly present a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Id.* at 32.

Here, the record establishes that Petitioner only raised his argument regarding the age of the victim in an unfiled N.Y. C.P.L. § 440.10 motion but did not renew that motion or seek appellate review of this issue.  Furthermore, Petitioner never raised any issues with the way the State obtained DNA evidence or the victim's statement.  It is well established that "[t]o properly exhaust a claim that relies on errors or omissions that are apparent from the record of trial or pretrial proceedings, petitioner must raise it on direct appeal to the Appellate Division and then seek leave to appeal to the Court of Appeals."  *Moore v. Attorney Gen. of NY*, No. 17-CV-0474 (JFB), 2019 WL 3717580, at *7 (E.D.N.Y. Aug. 7, 2019) (internal quotation marks and citation omitted).  Because these claims have not been adequately exhausted, Petitioner has deprived the state court "a fair opportunity to act on his claim." *Anthoulis v. New York*, No. 11-CV-1908 (BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan. 23, 2012).  Therefore, the Court finds these claims are unexhausted and cannot be a basis to provide Petitioner relief.

Traditionally, a mixed petition that contains both exhausted and unexhausted claims, is dismissed without prejudice to refiling another federal habeas corpus action after all claims have been exhausted.  *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000).  However, the Court is

empowered to consider whether the unexhausted claims are unquestionably meritless and dismiss the petition with prejudice. *See Flores v. Officer in Charge, Buffalo Fed. Det. Facility*, No. 11 CIV. 7977 RA, 2014 WL 1568843, at *2 (S.D.N.Y. Apr. 17, 2014); *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y.2010) (collecting cases); *Rowe v. New York*, No. 99 CIV 12281 GEL, 2002 WL 100633, at *5 (S.D.N.Y. Jan. 25, 2002) (citation omitted).

A review of the record reveals each of Petitioner's claims are unquestionably meritless and, therefore, the Court recommends dismissing these claims with prejudice. For one, Petitioner's claim that the victim was more than thirteen years old at the time of the crime is simply wrong. It appears Petitioner makes this argument because a physician notes Jane Doe was thirteen years of age when she conceived her children fathered by Petitioner. (Dkt. No. 16-3 at 49.) Though this might be the case, Petitioner ignores that *he admitted to raping* Jane Doe between November 1, 2008, and December 31, 2008, when Jane Doe was indisputably under thirteen. (Dkt. No. 16 at 12-14.) His admission in open court that he raped his step-daughter between November 1, 2008, and December 31, 2008, completely renders any argument about the age of Jane Doe at the time she conceived her twins irrelevant. Thus, this ground is factually meritless and cannot be a basis to grant habeas relief.

Moreover, as the State argued, Petitioner forfeited his ability to challenge whether Jane Doe was under thirteen when he raped her, the method for which the District Attorney obtained the DNA evidence, and Jane Doe's statement because he pled guilty to the indictment. In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court observed:

> When a criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is charged, he
> may not thereafter raise independent claims relating to the
> deprivation of constitutional rights that occurred prior to the entry
> of the guilty plea.

*Tollett*, 411 U.S. at 267; *see Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974) ("a person

complaining of . . . antecedent constitutional violations . . . is limited in a federal habeas corpus

proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that

the advice received from counsel was not within the range of competence demanded of attorneys

in criminal cases") (internal quotations and citations omitted).  Petitioner has not argued that his

guilty plea is invalid.[3]  Therefore, the Court finds Plaintiff's claims regarding the DNA evidence

and Jane Doe's statement are forfeited and cannot be a basis to grant habeas relief.

### B.    The Trial Court's Alleged Bias

#### 1.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") significantly limits the

power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In

discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68

(2d Cir. 2006), *cert. granted*, *judgment vacated and cases remanded on other grounds by*, 549

U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of the

---

[3]  In his Traverse, Petitioner makes the conclusory allegation that his guilty plea was not done willingly because "his trial lawyer lied to him[.]"  (Dkt. No. 25 at 8.)  Petitioner also claims his lawyer told him he would go to prison for only 7-8 years and that Judge Lawliss had told her that Petitioner would lose at trial and would receive a harsher sentence if convicted.  *Id*. at 5.  It is well established that a Petitioner cannot raise new grounds for relief in his traverse.  *See Parker v. Smith*, 858 F. Supp. 2d 229, 233 n.2 (N.D.N.Y. 2012) (citing *Voymas v. Unger*, No. 10-CV-6045, 2011 WL 2670023, at *13 (W.D.N.Y. July 7, 2011); *Jones v. Artus*, 615 F. Supp. 2d 77, 85 (W.D.N.Y. 2009)).  Moreover, the record establishes Petitioner never argued in New York court that his guilty plea was unknowing or unwilling because his lawyer lied to him.  Thus, this contention could not form the basis for habeas relief in any event because it is unexhausted.

> facts in light of the evidence presented in the State court
> proceeding."

*Id*. at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403

F. 3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.

2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has

observed that

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did.  [A] state
> court's decision is an "unreasonable application of" clearly
> established federal law if the state court "identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before
> it.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (internal quotation and citations

omitted, brackets in the original); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001)

(citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether a state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 409

(2009); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted).  Courts

have interpreted "objectively unreasonable" in this context to mean that "some increment of

incorrectness beyond error" is required for the habeas court to grant the application.  *Earley v.*

*Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

2.      *Analysis*

As noted above, Judge Lawliss presided over both Petitioner's criminal case and a matter in Family Court regarding Jane Doe.  During the Family Court proceedings, Judge Lawliss concluded that Petitioner had raped Jane Doe and that DNA testing confirmed that he was the father of her two children.  (Dkt. No. 16-3 at 104.)  Petitioner claims Judge Lawliss should have *sua sponte* recused himself from presiding over his criminal case because he was predisposed to finding Petitioner guilty.  (Dkt. No. 1 at 7.)

Defendant argues the Court need not consider the merits of this contention because the Third Department declined to consider the issue on New York State procedural grounds.  To wit, the Third Department found this claim was unpreserved because Petitioner failed to move for Judge Lawliss's recusal during trial and Petitioner waived his right to appeal.  (Dkt. No. 15 at 14.)  Respondent, however, neglects to consider the entirety of Petitioner's appeal to the Third Department.  To that end, the Third Department also—by permission—considered Petitioner's appeal of Judge Lawliss's decision denying his counseled N.Y. C.P.L § 440.10 motion to vacate the judgment of conviction that squarely presented the claim he raises in the instant petition regarding judicial bias.  *See Garrow*, 148 A.D.3d at 1460.  Petitioner also advanced this claim to the New York Court of Appeals.   (Dkt. No. 16-3 at 281.)  Accordingly, the Court finds the Third Department considered this issue on the merits.

Here, the Court is satisfied the Third Department's conclusion that Petitioner failed to demonstrate that Judge Lawliss's "dual role in both the neglect proceeding and th[e] criminal matter . . . was improper in any respect" was correct.  *Garrow*, 148 A.D.3d at 1461.  The Supreme Court has established that due process "requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case."

*Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (citations omitted)).  The Supreme Court has held that trial before a biased judge is an error that is "'structural,' and thus subject to automatic reversal . . . ."  *Neder v. United States*, 527 U.S. 1, 8 (1999) (citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)); *see also Johnson v. United States*, 520 U.S. 461, 468–69 (1997) (observing that it had found "lack of an impartial trial judge" to be a structural error).  "A favorable or unfavorable predisposition can . . . deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994) (citations omitted).

To prevail on a claim of judicial bias, a habeas petitioner must demonstrate that he did not receive a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing."  *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964).  "Mere allegations of judicial bias or prejudice do not state a due process violation."  *Brown v. Doe*, 2 F.3d 1236, 1248 (2d Cir. 1993), *cert. denied*, 510 U.S. 1125 (1994).

Here, the Third Department's conclusion that Judge Lawliss's handling of a related Family Court matter did not make him biased is consistent with federal law.  Indeed, Judge Lawliss made it clear in his decision denying Petitioner's N.Y. C.P.L. § 440.10 motion that he understood that his finding in Family Court did not mean he was necessarily guilty of the criminal charge.  Moreover, as noted above, Petitioner's guilty plea effectively forfeits his claim that Judge Lawliss was biased.  In sum, this Court finds no reason to reject the Third Department's conclusion that Petitioner failed to establish a violation of his due process rights based on judicial bias.  Therefore, the Court recommends that habeas relief be denied on this ground.

## III.    CERTIFICATE OF APPEALABILITY

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"  28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2553(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court recommends declining to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## IV.    CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein the Court hereby

**RECOMMENDS** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED and DISMISSED**; and the Court further

**RECOMMENDS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED**.

Dated: April 22, 2021
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[4]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 15 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

2019 WL 3717580
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Robert K. MOORE, Petitioner,
v.
The ATTORNEY GENERAL OF the
State of NEW YORK, Respondent.

No. 17-CV-0474 (JFB)
|
Signed 08/07/2019

**Attorneys and Law Firms**

Robert K. Moore, pro se.

Grazia R. DiVencenzo, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901, for Respondent.

**MEMORANDUM AND ORDER**

Joseph F. Bianco, Circuit Judge (sitting by designation):

**\*1** Robert K. Moore ("petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York state court. (*See* Pet., ECF No. 1.) On October 23, 2014, following a jury trial in the Supreme Court of New York, Suffolk County, petitioner was convicted of attempted murder in the second degree, in violation of New York Penal Law § 125.25(1), as amended by § 110.00, and assault in the first degree, in violation of New York Penal Law § 120.10(1). On January 7, 2015, petitioner was sentenced to concurrent determinate terms of eighteen years' imprisonment followed by five years of post-release supervision.

In the instant habeas action, petitioner challenges his conviction, claiming that his constitutional rights were violated on the following grounds: (1) petitioner was denied a fair trial when the trial court improperly indicated during voir dire that defense counsel may, as a matter of strategy, advise petitioner not to testify; (2) trial counsel was ineffective for failing to resubmit a motion requesting reinspection of the grand jury minutes; (3) remarks by the prosecutor during his opening and closing statements constituted prosecutorial

misconduct; (4) the trial court improperly permitted the prosecutor to ask questions about the petitioner's pre-arrest and post-arrest silence; (5) the trial court improperly rejected petitioner's pre-trial suppression request; (6) the prosecution did not establish his guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (7) the sentence imposed violated his constitutional rights; and (8) the integrity of the grand jury proceeding was impaired by errors. (*See* Pet. at 5-19.) For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied.

**I. BACKGROUND**

A. Facts
The following facts are adduced from the instant petition, respondent's answer, and the underlying record.

On January 19, 2014, at approximately 4:40 a.m., petitioner, petitioner's wife, complainant Solomon Maithya ("Maithya"), and other individuals were at the BP gas station at 1501 Straight Path, Wyandach, New York.[1] (Tr. at 235-41.)[2] Petitioner was retrieving something from the trunk of his car when Maithya approached him from behind, pulled out a 2 ½ to 3-foot pipe from his pants, and struck petitioner in the back of the head with the pipe. (Tr. at 182-84, 287-89; Ex. 14.[3]) Maithya swung the pipe at petitioner again, but missed. (Tr. at 289-90.) Petitioner then approached his wife, spoke to her briefly, and she drove away from the gas station. (Tr. at 241, 255-56.) Petitioner then turned his attention back to Maithya, either punching Maithya or striking him in the face with the pipe, knocking him out. (Tr. at 239-40, 312, 596-97, 607-14.) While Maithya was then lying motionless on the side of the curb, petitioner punched him, stomped on his head at least twice, and repeatedly pounded the pipe into Maithya's chest. (Tr. at 163-64, 242-50, 314-15.) Petitioner then dropped the pipe, which another man, Darnell Morgan ("Morgan"), threw to the side. (Tr. at 313, 597.) An unidentified man picked up the pipe with a towel and carried it away from the scene. (Tr. at 382, 717-18; Ex. 14.) Petitioner then kicked Maithya in the ribs and side of the head several times, while Maithya was still unconscious on the ground. (Tr. at 243.) Petitioner also lifted up Maithya's upper body and dropped him back to the ground multiple times while he was still unconscious. (Tr. at 317-18.)

**\*2** Three witnesses called 911 between 4:55 and 4:57 a.m. to report this physical altercation, some believing that Maithya had been killed during the incident. (Tr. at 244-45, 442-43,

598-99.) [4] Police Officers Robert Piccarillo and Christopher Dietrich responded to the scene after receiving a call through dispatch for a fight, which incorrectly reported that the suspect had left the scene. (Tr. at 95-100, 152-53.) When the officers arrived at the gas station at approximately 5:01 a.m., they saw petitioner attempting to lift the still unresponsive Maithya from the ground and telling him to get up. (Tr. at 62, 155, 173-74.) The officers observed a laceration on petitioner's left cheek, but he did not tell them what had happened. (Tr. at 156.) The officers did not see any blood on petitioner's clothing or boots, nor did they find any weapons at the scene. (Tr. at 175-77, 181-82.) No individuals at the scene responded to the officers' requests for information. (Tr. at 100-01, 179.) The officers learned that the gas station had video surveillance. (Tr. at 161-62, 331.) However, the video was unclear on the gas station monitor and it was not until after downloading the video and viewing it at the police station that the officers were able to see more clearly what had occurred. (Tr. at 113, 125-26, 131-42, 163, 344.)

While still at the scene, Sergeant Semetsis spoke with petitioner and asked about the cut on his cheek, but petitioner responded that nothing happened and that he was "okay." (Tr. at 336-37.) In addition, Sergeant Semetsis observed petitioner to be in an altered mental state. (Tr. at 336-38.) The police kept petitioner at the scene for approximately an hour to an hour and one-half, though they were unsure whether he was a witness, victim, or suspect. (Tr. at 180, 205-07, 338-39.) By the time Sergeant Semetsis arrived at the scene, Maithya was already in an ambulance. (Tr. At 332.) Sergeant Semetsis was initially informed that Maithya had not suffered a serious physical injury, and eventually he told petitioner he could leave. (Tr. 332-39).

Maithya was transported by ambulance to Good Samaritan Hospital, and was later transferred to Stony Brook University Hospital due to the severity and complexity of his injuries. (Tr. at 554-56.) As a result of this incident, Maithya suffered several skull and facial fractures, as well as bleeding between the brain and skull and in the brain itself. (Tr. at 545-49.) He was severely neurologically impaired and was intubated to assist his breathing. (Tr. at 545-46.) Maithya remained at Stony Brook University Hospital for four months. (Tr. at 512.)

Once Sergeant Semetsis was notified of the seriousness of Maithya's injuries, the investigation was assigned to Detective Steven Paglino. (Tr. at 221-22, 340-41, 347-48.) Detective Paglino viewed the surveillance video and spoke to witnesses

who identified petitioner as the person who had beaten Maithya. (H. at 65-73, 91-98.) [5]

Ultimately, Police Officer Carmine Pellegrino and Sergeant Nicolosi arrested petitioner five days after the incident, on January 24, 2014. (Tr. at 392-94.) Petitioner was cooperative and made no statements to law enforcement on the ride to the precinct. (Tr. at 417-20.) After arriving at the precinct around 6:50 p.m., Sergeant Nicolosi observed an injury to the rear of petitioner's head and when asked about the injury, petitioner responded that he had been in a fight a couple of days before. [6] (Tr. at 396-97.) Petitioner was then taken to an interview room. Detectives Paglino and James Hughes entered the room around 8:07 p.m., and before they said anything to petitioner, petitioner said, "you guys must be assigned to homicide now." (Tr. at 692-93.) Detective Paglino noticed injuries on petitioner's face and asked him what happened to his face; petitioner replied that he slipped and fell on ice while shoveling snow. (Tr. at 693.) The detectives then left the room. (H. at 78-79.) Detective Paglino reentered the room around 9:10 p.m. and read petitioner his *Miranda* rights, including information about waiving those rights. (H. at 78-82.) Detective Paglino testified that petitioner repeatedly interrupted his reading of the *Miranda* rights, saying "I don't do that, put that away." (H. at 79-82.) After Detective Paglino finished advising petitioner of his rights, petitioner refused to sign the card or speak to the detective. (H. at 82.)

**\*3** On September 17, 2014, a suppression hearing began in Suffolk County Supreme Court during which members of law enforcement testified regarding statements made by petitioner and the identification of petitioner. In a written decision dated October 1, 2014, the court found that petitioner's statements were voluntary. (*See* Hearing Court Decision, ECF No. 12-1, at 64-66.) Specifically, the court found that petitioner's statement "you guys must be assigned to homicide now" was "unsolicited and voluntary," and that his statement about the source of his injuries was "not in response to an accusatory question, but was an inquiry meant to catalog the physical well being of the defendant." (*Id.* at 66.) Finally, the court held that petitioner's statements at the crime scene in the presence of the police were "non-custodial and voluntarily offered," as they were made in the context of "non accusatory questioning by the police." (*Id.*)

Petitioner was tried in Suffolk County Supreme Court starting on October 7, 2014. During the trial, the prosecution presented testimony from Maithya, multiple eyewitnesses at the gas station, members of law enforcement, and

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

Case 9:18-cv-00981-MAD-TWD    Document 27    Filed 04/22/21    Page 17 of 56

expert witnesses involved in the investigation. During Maithya's testimony, he repeatedly stated that he was unable to remember significant portions of the incident. (Tr. at 491-514.) Ultimately, at the close of the trial, the jury found petitioner guilty of attempted murder in the second degree, in violation of ◾ New York Penal Law § 125.25(1), as amended by § 110.00, and assault in the first degree, in violation of ◾ New York Penal Law § 120.10(1). (Tr. at 924.) On January 7, 2015, petitioner was sentenced to concurrent determinate terms of eighteen years of imprisonment followed by five years of post-release supervision. (S. at 20-21.) [7] The court emphasized that it "did not fully appreciate" the extent of Maithya's injuries prior to trial, when it had offered a three-year sentence, and said that "what's fair after trial is not the same thing that was fair before trial." (S. at 19-20.)

B. Procedural History

1. State Procedural History

On December 4, 2015, petitioner appealed his conviction to the Second Department of the New York State Appellate Division, in which he argued that: (1) the trial court committed reversible error when it indicated during voir dire that defense counsel may, as a matter of strategy, advise petitioner not to testify; (2) it constituted prosecutorial misconduct when the prosecutor stated that petitioner's pre-arrest silence was indicative of "consciousness of guilt" and argued that petitioner's convictions were necessary because "there comes a point in time when society demands humanity"; (3) the trial court committed reversible error when it allowed the prosecutor, during his redirect examination of a police officer, to ask questions about the petitioner's post-arrest silence; (4) the trial court committed reversible error when it failed to suppress post-arrest, pre-*Miranda* statements made by petitioner to law enforcement; (5) the prosecution failed to prove petitioner guilty beyond a reasonable doubt and his convictions were against the weight of the evidence; and (6) petitioner's sentence was harsh and excessive. (*See* App. Div. Br. at 24-58, ECF No. 12-1.) [8] Petitioner then filed a supplemental *pro se* brief on February 16, 2016, adding that: (1) it constituted prosecutorial misconduct for the prosecutor to allow petitioner to stand trial on Detective Paglino's perjured/hearsay grand jury testimony; (2) trial counsel was ineffective for failing to resubmit a motion requesting reinspection of the grand jury minutes; and (3) the trial court committed reversible error when it denied petitioner's motion to dismiss the indictment for the prosecutor's failure to charge

the grand jury with the justification defense. (*See* Suppl. App. Div. Br. at 9-12, ECF No. 12-2.)

**\*4** On September 14, 2016, the appeal was denied in its entirety, on both procedural and substantive grounds. *See generally People v. Moore*, 37 N.Y.S.3d 158 (2d Dep't 2016). In affirming petitioner's conviction, the Second Department rejected his argument relating to the pre-trial suppression hearing, holding that the statements were either "spontaneous or voluntary ... or not the product of custodial interrogation." *Id.* at 159. In rejecting petitioner's argument relating to the sufficiency of the evidence, the Second Department held that his challenge was unpreserved for appellate review because "he failed to move for a trial order of dismissal specifically directed at the errors he now claims." *Id.* Additionally, in "viewing the evidence in the light most favorable to the prosecution," there was legally sufficient evidence to disprove the petitioner's justification defense beyond a reasonable doubt. *Id.* Furthermore, when conducting its independent review of the weight of the evidence, the court "accord[ed] great deference to the jury's opportunity to view the witnesses, hear testimony, and observe demeanor." *Id.* In reviewing the underlying record, the court concluded that "the jury's rejection of the defendant's justification defense and its verdict of guilt were not against the weight of the evidence." *Id.*

The Second Department also rejected petitioner's argument that improper statements by the prosecutor deprived petitioner of his right to a fair trial. *Id.* The court found that, "[t]o the extent that some of the prosecutor's remarks were improper, those remarks did not deprive the defendant of a fair trial, and any other error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that any error contributed to the defendant's conviction." *Id.*

Finally, the Second Department found that the sentence imposed was not excessive, and that petitioner's other contentions were "either without merit or do not warrant reversal." *Id.* at 159-60.

Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on November 21, 2016. *See People v. Moore*, 28 N.Y.3d 1074 (2016).

2. The Instant Petition

Case 9:18-cv-00981-MAD-TWD Document 27 Filed 04/22/21 Page 18 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

On January 24, 2017, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that: (1) he was denied a fair trial when the trial court improperly indicated during voir dire that defense counsel may, as a matter of strategy, advise petitioner not to testify; (2) defense counsel was ineffective for failing to resubmit a motion requesting reinspection of the grand jury minutes; (3) the prosecutor committed prosecutorial misconduct when he made improper remarks at trial; (4) the prosecutor elicited improper testimony regarding petitioner's silence regarding self-defense; (5) the trial court improperly rejected petitioner's pre-trial suppression request; (6) the prosecution did not establish his guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (7) the sentence imposed was harsh and excessive; and (8) the integrity of the grand jury proceeding was impaired by particular mistakes. (*See* Pet. at 5-19.) On April 13, 2017, respondent filed a reply in opposition to the petition. (*See* Resp't's Br., ECF No. 12.)[9] Thereafter, on May 12, 2017, petitioner submitted a reply in further support of his petition. (*See* Pet'r's Reply Br., ECF No. 17.)

The Court has fully considered the parties' submissions, as well as the underlying record.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**\*5** (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. " 'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.' " *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

A. Procedural Requirements

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 19 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

### 1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida,* 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court with jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner " 'fairly presen[t]' federal claims to the state courts in order to give the State the " 'opportunity to pass upon and correct' " alleged violations of its prisoners' federal rights.' " *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (alteration in original) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard,* 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must fairly present his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *see also Duncan,* 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.' " *Jones v. Keane,* 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye,* 696 F.2d at 191-92 (collecting cases). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192.

### 2. Procedural Bar

**\*6** A petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 729-33 (1991); *see, e.g., Michigan v. Long,* 463 U.S. 1032, 1041 (1983). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 261-63 (1989) (internal quotation marks omitted). A state court's reliance on an independent and adequate procedural bar precludes habeas review even if the state court also rejected the claim on the merits in the alternative. *See, e.g., id.* at 264 n.10 (holding that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding," so long as the state court "explicitly invokes a state procedural bar rule as a separate basis for decision"); *Glenn v. Bartlett,* 98 F.3d 721, 725 (2d Cir. 1996) (same).

The procedural bar rule is based on the "comity and respect" that state judgments must be accorded. *House v. Bell,* 547 U.S. 518, 536 (2006). Its purpose is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Coleman,* 501 U.S. at 730-31. Generally, the Second Circuit has deferred to state findings of procedural default as long as they are supported by a "fair and substantial basis" in state law. *Garcia,* 188 F.3d at 78. However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002). Nevertheless, principles of comity "counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia,* 188 F.3d at 77 (citation and internal quotation marks omitted).

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 20 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

If a claim is procedurally barred, a federal habeas court may not review it on the merits unless the petitioner demonstrates both cause for the default and prejudice resulting therefrom, or if he demonstrates that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778(BMC), 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Prejudice can be demonstrated by showing that the "errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation mark omitted) (quoting *Rodriguez v. Mitchell*, 252 F.3d 191, 203 (2d Cir. 2001)). A miscarriage of justice is demonstrated in extraordinary cases, such as where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on a miscarriage of justice, the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-38.

"The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2002) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998)).

3. Application

**\*7** First, the Court concludes that Ground Six of petitioner's habeas petition, arguing both that there was insufficient evidence to support his conviction and that the prosecution failed to meet their burden of proof (Pet. at 16.), is not properly exhausted. Within this argument, petitioner contends that the trial court provided a "faulty justification charge" to the jury and that witnesses admitted to being "prepped by the prosecution." (Pet. at 15-16.) As the government suggests, these arguments were not presented to the state court as a basis for this claim and are entirely record-based. It is well-settled that "[t]o properly exhaust a claim that relies on errors

or omissions that are apparent from the record of trial or pretrial proceedings, petitioner must raise it on direct appeal to the Appellate Division and then seek leave to appeal to the Court of Appeals." *Anthoulis v. New York*, No. 11 Civ. 1908 (BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan. 23, 2012). Accordingly, the Court finds that this claim has not been adequately exhausted as petitioner did not set forth "the essential factual allegations" on direct appeal and thus deprived the state court of a "fair opportunity to rule on the claim." *See* *Daye*, 696 F.2d at 191.

Furthermore, petitioner's sufficiency of the evidence claim is procedurally barred because the Second Department decided it on "independent and adequate" procedural grounds. *See* *Coleman*, 501 U.S. at 729-31. The court rejected petitioner's argument that the evidence at trial was insufficient to support his conviction, ruling that his challenge was unpreserved for appellate review because "he failed to move for a trial order of dismissal specifically directed at the errors he now claims." *Moore*, 37 N.Y.S.3d at 159. Under firmly established New York law, legal insufficiency claims are not preserved unless the motion for dismissal is " 'specifically directed' at the alleged error." *People v. Gray*, 86 N.Y.2d 10, 19 (1995) (quoting *People v. Cona*, 49 N.Y.2d 26, 33 (1979)).

Further, a state court's statement that a petitioner's claim was unpreserved for appellate review is sufficient to establish that the court was relying on a procedural bar as an independent ground in disposing of the issue. *See, e.g.,* *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996). This is true even if the state court held, in the alternative, that petitioner's claim failed on the merits. *See* *Green v. Travis*, 414 F.3d 288, 293 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.").

To overcome a procedural bar to his sufficiency of the evidence claim, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. Here, petitioner has not demonstrated any cause for the default or provided any explanation for his failure to properly exhaust all of his claims in state court, nor that a fundamental miscarriage of justice

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 21 of 56

will take place if the Court fails to consider the procedurally defaulted claims. Accordingly, petitioner's sufficiency of the evidence claim is not reviewable by this Court. However, assuming *arguendo* that this claim was properly before this Court, it is without merit, as set forth *infra*.

### B. The Merits

The Court proceeds to address the merits of each of petitioner's claims, finding that none provides a basis for habeas relief.

### 1. Statement During Voir Dire About Strategic Decision Not To Testify

As noted above, petitioner claims that he was denied a fair trial and his due process rights were violated when the trial judge made comments during voir dire about a defendant's strategic choice not to testify at trial. (Pet. at 5.) The comments made by the trial judge at issue are the following:

> The Court: See, that brings an interesting point. Remember, what you need, if you were to find an individual guilty, is that the People have to prove their case beyond a reasonable doubt. And we won't get into all the elements right now. What [defense counsel] is getting at is that he might -- you have two sides on the trial attorneys here. [Defense counsel], after the People rest, may in his opinion say, you know, I don't think they proved their case beyond a reasonable doubt. So he may advise his client don't testify because they didn't prove their case. That's a tactic, that's trial attorneys doing what they do, what both of these young men are very good at. And he may make that decision on a tactical basis. Can't hold it against him or against the defendant. We're all in agreement, right?

> **\*8** [All prospective jurors responded in the affirmative.]

(Jury Selection Tr. at 185-86, ECF No. 12-13.)

> The Court: Here's the thing. Again, remember, the prosecution has the sole burden of proof. They have to prove the elements of the two crimes or either/or both of them beyond a reasonable doubt. Both of these young men are seasoned trial attorneys, they are very good at what they do. The prosecution -- they may put on their

> case, the People may rest, and [defense counsel] may advise his client you know what? My opinion, they didn't prove the charges beyond a reasonable doubt. So I'm advising you not to testify. He may do that. As a trial tactic. All right? It is perfectly acceptable.

(*Id.* at 485-86.)

Petitioner raised this claim on direct appeal and it was rejected by the state court. Having reviewed the record, the Court concludes that petitioner has not demonstrated that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law.

There is "no doubt that prejudicial intervention by a trial judge could so fundamentally impair the fairness of a criminal trial as to violate the Due Process Clause." *Daye v. Attorney General of State of N.Y.*, 712 F.2d 1566, 1570 (2d Cir. 1983). "The critical question in determining whether the trial judge was fundamentally unfair is twofold: (1) did the trial judge's interference 'distract the jury from a conscientious discharge of their responsibilities to find the facts, apply the law, and reach a fair verdict,' and (2) 'was the overall conduct of the trial such that public confidence in the impartial administration of justice was seriously at risk.' " *Copeland v. Walker*, 258 F. Supp. 2d 105, 135 (E.D.N.Y. 2003) (quoting *Daye*, 712 F.2d at 1572). It is well settled that a trial court may not tell a jury that a petitioner's decision not to testify is somehow evidence of guilt. *See Griffin v. California*, 380 U.S. 609, 615 (1965). However, in the instant case, this trial judge's comments during jury selection do not rise to the level of impinging on petitioner's constitutional rights. It is clear that the comments were made in the context of confirming that prospective jurors should not draw any adverse inference from the petitioner's potential decision not to testify at trial. Accordingly, the Court, after carefully reviewing the record of the jury selection process, finds that these comments did not render petitioner's trial fundamentally unfair, nor did they violate his due process rights.

### 2. Ineffective Assistance of Trial Counsel

Petitioner claims that he received ineffective assistance of counsel because his trial attorney failed to move to reinspect the grand jury minutes. (Pet. at 6.)

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 22 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

a. Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

**\*9** In order to meet the first prong of the *Strickland* test, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms' .... Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial." *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688). AEDPA review of an ineffective assistance of counsel claim is " 'doubly deferential' ... because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Burt v. Titlow*, 571 U.S. 12, 13 (2013) (quoting *Strickland*, 466 U.S. at 690).

In particular, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689); *see also Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) ("As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if 'there [was] no ... tactical justification for the course taken.' " (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998))). For that reason, "[s]trategic choices made by counsel after thorough investigation ... are virtually unchallengeable ... and there is a strong presumption that counsel's performance falls 'within the wide range of reasonable professional assistance.' " *Gersten*

*v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689-90).

Finally, in determining whether one or more errors by trial counsel renders the representation constitutionally deficient under the first prong of *Strickland*, the Court "need not decide whether one or another or less than all of these ... errors would suffice, because *Strickland* directs us to look at the 'totality of the evidence before the judge or jury,' keeping in mind that '[s]ome errors [ ] have ... a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture....' " *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (alterations in original) (quoting *Strickland*, 466 U.S. at 695-96).

The second prong of the *Strickland* analysis focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

b. Application

Petitioner argues that his trial counsel was constitutionally ineffective for failing to move to reinspect the grand jury minutes in light of the discrepancy between the contents of the surveillance video and Detective Paglino's grand jury testimony. (Pet. at 6.) Specifically, petitioner claims that Detective Paglino's grand jury testimony was perjurious, as he stated that he observed petitioner striking Maithya with a pipe, but the video did not include that portion of the incident. Accordingly, petitioner argues that, if trial counsel had filed a motion to reinspect the grand jury minutes, there was a reasonable probability that the indictment may have been dismissed.

**\*10** First, as pointed out by the respondent, the video was shown to the members of the grand jury, so they were able to view the contents themselves. In addition, as discussed more *infra*, Detective Paglino was subjected to cross-examination at trial regarding these alleged discrepancies in his grand jury testimony, and therefore the trial jury was made aware of this issue before rendering its verdict. (Tr. at 725-29.) Further, defense counsel could have reasonably concluded that submitting a motion to reinspect the grand jury minutes would not have resulted in the dismissal of the indictment, particularly since the trial judge had already reviewed the minutes that included both Detective Paglino's testimony and the video surveillance.

The totality of the record shows that trial counsel provided petitioner with effective assistance. In particular, defense counsel vigorously cross-examined Detective Paglino about the conflicts between his grand jury testimony and the contents of the video at the pre-trial *Huntley* hearing and again at trial to attack his credibility. (H. at 94-96; Tr. at 725-30.) Therefore, the Court finds that defense counsel's decision not to file a motion to reinspect the grand jury minutes was not ineffective under the first prong of *Strickland*.

Even assuming *arguendo* that trial counsel's failure to move to reinspect the grand jury minutes was an error that satisfied the first prong of *Strickland*, petitioner cannot establish that he suffered prejudice as a result of that failure. There is no basis to conclude that a motion to reinspect would have been granted or that, if granted, it would have led to dismissal of the indictment. Moreover, it is well settled that a guilty verdict of a trial jury cures a defect in the grand jury proceeding. *See, e.g., Dixon v. McGinnis*, 492 F. Supp. 2d 343, 348 (S.D.N.Y. 2007) (denying ineffective assistance of counsel claim despite counsel's failure to timely submit a motion to dismiss indictment, which was "negligent at best," because trial jury's guilty verdict cured any defect and therefore petitioner could not establish prejudice). Accordingly, the Court concludes that petitioner's ineffective assistance of counsel claim is without merit.

### 3. Prosecutorial Misconduct

Petitioner claims that certain remarks made by the prosecutor during his opening statement and summation constituted prosecutorial misconduct. (Pet. at 8.) Having reviewed this claim, the Court finds it meritless.

#### a. Standard

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)). For prosecutorial misconduct to amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotation marks omitted) (quoting *Darden v. Wainwright,* 699 F.2d 1031, 1036 (11th Cir. 1983)). Instead, the prosecutor's comments "must represent 'egregious misconduct.' " *Celleri v. Marshall,* No. 07-CV-4114 (JFB), 2009 WL 1269754, at \*17 (E.D.N.Y. May 6, 2009) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974)); *accord United States v. Shareef,* 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.' ").

Accordingly, to warrant relief, the Court must conclude that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181 (internal quotation marks omitted) (quoting *Donnelly,* 416 U.S. at 643). However, "not every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' " *Donnelly,* 416 U.S. at 642 (quoting *Lisenba v. California,* 314 U.S. 219, 236 (1941)). Rather, a petitioner must show that he "suffered actual prejudice because the prosecutor's comments ... had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2nd Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.* In "analyzing the severity of alleged misconduct, the court examines the prosecutor's statements in the context of the entire trial." *Miller v. Barkley,* No. 03 Civ. 8580 (DLC), 2006 WL 298214, at \*2 (S.D.N.Y. Feb. 8, 2006)

Case 9:18-cv-00981-MAD-TWD Document 27 Filed 04/22/21 Page 24 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

(citing *United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004)).

**\*11** The Second Circuit recognized one of those "rare cases" where prosecutorial error was so egregious to provide relief in *Floyd*, and in doing so "emphasize[d] that [its] holding ... [was] based on the cumulative effect of the three alleged categories of improper remarks," and that the "case [did] not involve one, or a few isolated, brief episodes; rather, it involve[d] repeated and escalating prosecutorial misconduct from initial to closing summation." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990). In that case, "the evidence against [the petitioner] was not heavy," *id.* at 356, and the prosecutor: (1) made "references to the Fifth Amendment [that] could well have been interpreted by the jury as a comment on Floyd's failure to testify," *id.* at 353; (2) "repeated remarks that the Fifth Amendment was 'a protection for the innocent' and not 'a shield' for 'the guilty' [that] incorrectly stated the law by diluting the State's burden of proof beyond a reasonable doubt and undermining the presumption of innocence," *id.* at 354; (3) "impermissibly asked the jury to pass on her personal integrity and professional ethics before deliberating on the evidence, thereby implying that she personally vouched for [a key witness's] credibility," *id.*; and, (4) "characterized [the defendant], who did not testify, as a liar literally dozens of times throughout her opening and closing summations," *id.*, and, "[e]ven more troubling, many of the prosecutor's remarks erroneously equated Floyd's alleged lies with proof of guilt beyond a reasonable doubt," *id.* at 355. The Second Circuit held that "under the totality of the circumstances presented ... the cumulative effect of the prosecutor's persistent and clearly improper remarks amounted to such egregious misconduct as to render Floyd's trial fundamentally unfair." *Id.* at 353.

### b. Application

Petitioner argues that his constitutional rights were violated because of particular remarks by the prosecutor during his opening and closing statement that petitioner asserts rendered his trial fundamentally unfair. First, the prosecutor, during the opening statement, told the jury he would ask them at the end of the trial to "send a clear message" and convict petitioner, "because there comes a point in time where society demands humanity." (Tr. at 21.) He repeated this assertion

in the summation, stating "there comes a point in time where society demands humanity." (Tr. at 791.) In addition, petitioner challenges the prosecutor's comments regarding his pre-arrest silence. Specifically, during the opening statement the prosecutor stated that petitioner "didn't say he acted in self-defense" (Tr. at 19), and during the summation noted that "he never talked about self-defense" [10] (Tr. at 810). Petitioner challenged these comments on direct appeal, and the Second Department rejected the claim, stating that "[t]o the extent that some of the prosecutor's remarks were improper, those remarks did not deprive the defendant of a fair trial, and any other error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that any error contributed to the defendant's conviction." *Moore*, 37 N.Y.S.3d at 159. For the reasons set forth below, the Court finds that the state court's determination was neither contrary to, nor an unreasonable application of, clearly established federal law and rejects this claim on the merits.

First, it cannot be said that any of these statements "infected the trial" in such a manner as to deny petitioner's due process rights. The remarks made by the prosecutor that "society demands humanity," even assuming *arguendo* they were made in error, were not an egregious error. As an initial matter, it is not at all clear that the prosecutor's statement that "society demands humanity" was improper. *See United States v. Pirro*, 9 F. App'x 45, 51 (2d Cir. 2001) (stating that "the prosecutor's argument to the jury that 'justice demands' a conviction was perfectly legitimate"). Next, as discussed *infra*, the prosecutor's comments regarding petitioner's not stating to the police that his actions were taken in self-defense, were permissible if petitioner made other statements to the police.

Turning to the prosecutor's request for the jury to "send a message" with their conviction, the Court finds this statement improper, but does not find that the comment rose to the level of prosecutorial misconduct entitling petitioner to habeas relief. In particular, petitioner has not shown prejudice given the limited nature of the comment in the context of the entire summation and the overwhelming evidence against petitioner. As noted above, even where a prosecutor has made improper comments, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." *Darden*, 477 U.S. at 181-83. "Where the specific remarks the prosecutor makes neither 'touch upon [n]or bolster the most potent of the government's evidence,' a court will not generally overturn a verdict." *Miller*, 2006

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 25 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

WL 298214, at *3 (alteration in original) (quoting *United States v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002) (further noting that "a court will not ignore otherwise strong evidence of a defendant's guilt on the basis of a single prejudicial remark")).

 **\*12** In the instant matter, the improper statement made by the prosecutor constituted only a small portion of the summation "the bulk of which focused instead on the weight of the evidence against petitioner." *Figueroa v. Heath*, No. 10-CV-0131(JFB), 2011 WL 1838781, at \*23 (E.D.N.Y. May 13, 2011); *see also United States v. Rivera*, 22 F.3d 430, 437 (2d Cir. 1994) (stating that "[a] prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice.") Ultimately, the evidence of guilt was overwhelming in this case, making any potential prejudice from the prosecutor's remarks insubstantial. *See Thomas*, 377 F.3d at 245; *see also United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) ("[I]f proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial."). In sum, having reviewed the record, petitioner's prosecutorial misconduct claim does not provide a basis for habeas relief.

#### 4. Pre- and Post-Arrest Silence Claim

Petitioner argues that the trial court erred by allowing the prosecution to comment on his pre-arrest silence and allowing the questioning of a law enforcement witness regarding his post-arrest silence. (Pet. at 8-9.)

Regarding his pre-arrest silence, petitioner takes issue with the following comments made by the prosecutor during his opening statement and summation:

> The defendant didn't complain of any injuries, he didn't say he acted in self defense.

(Tr. at 19.)

> Consciousness of guilt. At the scene he never talked about self-defense. He

never said, I got hit first. What would you do?

(Tr. at 810.)

Petitioner also takes issue with the "trial court allow[ing] the [p]rosecutor to ask questions to [a] police officer concerning [petitioner's] post arrest silence ... these questions lead [the] jury to believe [petitioner] was not justified." (Pet. at 9.) Petitioner is referring to the following exchange during the re-direct examination of Police Officer Pellegrino, discussing an exchange during petitioner's transport to the precinct:

> Question: Did [petitioner] ever say to you that he acted in self-defense?
>
> Answer: No.
>
> Question: Did at any time he tell you that the injuries were from a pipe?
>
> Answer: No.
>
> Question: At any time did he tell you those injuries were caused by Africa?
>
> Answer: No.
>
> Question: At any point did he say he got into a fight because of what Africa did?
>
> Answer: No.

(Tr. at 429.) The prosecutor also referenced in his summation petitioner's failure to mention self-defense in his post-arrest statements to the police. (Tr. at 810-11.)

As a threshold matter, although cognizable under state law, "the Supreme Court has held that the use of a defendant's pre-arrest silence for impeachment purposes does not offend any constitutional guarantees." *Jones v. Bradt*, No. 6:13-CV-6260(MAT), 2015 WL 506485, at \*13 (W.D.N.Y. Feb. 6, 2015) (citing *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980)). Thus, arguments regarding the prosecutor's comments on pre-arrest silence are not cognizable on a habeas petition. [11] With respect to the post-arrest situation, "[i]t is well settled that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested." *United States v. Mullins*, 364 F.2d 173,

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 26 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

175 (2d Cir. 1966) (citations omitted); *accord* 🔖 *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976). However, "[t]he right to remain silent does not include the right to make false denials." *Hernandez v. Senkowski*, Nos. CV 98-5270 RR, CV 99-169 RR, 1999 WL 1495443, at \*22 (E.D.N.Y. Dec. 29, 1999) (citing 🔖 *Brogan v. United States*, 522 U.S. 398 (1998)); *see also* 🔖 *Anderson v. Charles*, 447 U.S. 404, 408-09 (1980) (*Doyle* does not preclude a prosecutor from commenting on inconsistent statements by a defendant to the police). Therefore, where, as here, a defendant chooses to make some statements to the police, a prosecutor can comment on the fact that the defendant lied or did not mention certain key facts that he or she later asserts at trial.

**\*13** Finally, considering these brief statements in the context of the trial in its entirety, there was an overwhelming amount of evidence of petitioner's guilt, including multiple eyewitness accounts of the incident, video surveillance that captured a portion of the incident, photographs of injuries, and corroborating 911 calls from the scene. Therefore, the Court concludes that, even if references to petitioner's failure to speak about self-defense in his pre- and/or post-arrest statements amounted to an error by the prosecution, the error is harmless considering the overwhelming evidence of petitioner's guilt. Accordingly, the Court finds that this claim does not provide a basis for habeas relief.

5. Failure to Suppress Statements

Petitioner contends that the "[t]rial court committed error when it failed to suppress custodial statements made by [petitioner] finding that [petitioner] was advised of his constitutional rights." (Pet. at 15.) The state court denied this claim on the merits, finding that "the County Court properly denied those branches of his omnibus motion which were to suppress certain statements he made to law enforcement officials. The statements were either spontaneous and voluntary ... or not the product of custodial interrogation." *Moore*, 37 N.Y.S.3d at 159. The Court finds that the state court's determination was neither contrary to, nor an unreasonable application of federal law, nor was it an unreasonable determination of the facts in light of the record.

a. Standard

The Fifth Amendment of the United States Constitution provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Recognizing that a custodial interrogation creates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," the Supreme Court held in *Miranda* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 🔖 *Miranda v. Arizona*, 384 U.S. 436, 444, 467 (1966). "In particular, prior to the initiation of questioning, [law enforcement] must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present ... if [he] so desires.' " 🔖 *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (alterations in original) (quoting 🔖 *Miranda*, 384 U.S. at 468-70). "*Miranda*'s warning requirements, however, apply only to 'custodial interrogation.' " 🔖 *Georgison v. Donelli*, 588 F.3d 145, 155 (2d Cir. 2009) (quoting 🔖 *United States v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004)). "This determination has two parts: (a) there must be an interrogation of the defendant, and (b) it must be while she is in 'custody.' " *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011).

The Supreme Court defined interrogation for purposes of *Miranda* in 🔖 *Rhode Island v. Innis*, 446 U.S. 291 (1980). In *Innis*, the Supreme Court held that "[t]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 🔖 *Id.* at 300-01. An "incriminating response" is "any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial." 🔖 *Id.* at 301 n.5. Accordingly, "[w]here statements are spontaneous—that is, where they are not the result of questioning or its functional equivalent—*Miranda* warnings are not necessary and the statements are not protected." *United States v. Noble*, No. 07 Cr. 284 (RJS), 2008 WL 1990707, at \*7 (S.D.N.Y. May 7, 2008); *accord* 🔖 *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *Wolfrath*

Case 9:18-cv-00981-MAD-TWD Document 27 Filed 04/22/21 Page 27 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

*v. LaVallee*, 576 F.2d 965, 973 n.6 (2d Cir. 1978) ("[S]ince the statement which was litigated below was a gratuitously volunteered statement, *Miranda* itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures").

**\*14** The Supreme Court has also recognized an exception to *Miranda* for statements collected through routine booking questions [12] that "appear reasonably related to the police's administrative concerns." *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990). Routine booking questions include "those designed to elicit an arrestee's pedigree, such as the arrestee's name, aliases, date of birth, address, place of employment, and marital status." *United States v. Chandler*, 164 F. Supp. 3d 368, 387 (E.D.N.Y. 2016). Additionally, questions about an arrestee's medical condition may be "part of [a] booking procedure designed to fulfill the government's obligation to provide medical attention if necessary." *United States v. Bishop*, 66 F.3d 569, 572 n.2 (3d Cir. 1995).

However, "recognizing a booking exception to *Miranda* does not mean ... that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Rosa v. McCray*, 396 F.3d 210, 222 (2d Cir. 2005) (quoting *Muniz*, 496 U.S. at 602 n.14). Routine booking questions may not fall within the pedigree exception if the police should have known that asking the questions was "reasonably likely to elicit an incriminating response." *Id.* (quoting *Innis*, 446 U.S. at 301-02). The determination of whether a booking question falls within the pedigree exception to *Miranda* requires careful consideration of "both the question itself and its relationship to the suspected crime." *United States v. Sezanayev*, No. 17 Cr. 262 (LGS), 2018 WL 2324077, at \*12 (S.D.N.Y. May 22, 2018); *see also United States v. Burns*, 684 F.2d 1066, 1068, 1076 (2d Cir. 1982) (assuming without deciding that pedigree exception did not apply to questions about "history of drug use, past record, and personal finances," where defendant was charged with possession of heroin with intent to distribute); *United States v. Valentine*, 657 F. Supp. 2d 388, 394 (W.D.N.Y. 2009) (finding that pedigree exception did not apply to identity questions where officers "had a

strong suspicion that [the defendant] was an illegal alien in possession of fraudulent documents concerning his identity").

#### b. Application

Petitioner claims that the trial court erred in denying the motion to suppress his statement to Detectives Paglino and Hughes that "you guys must be assigned to homicide now." (H. at 77.) The Appellate Division properly denied the motion, finding that the statement was "either spontaneous and voluntary ... or not the product of custodial interrogation." *Moore*, 37 N.Y.S.3d at 159 (citations omitted). After an extensive review of the record, the Court concludes that the trial court's determination regarding this particular statement was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

Although it is undisputed that defendant was in custody when he made the statement at issue, the Court agrees with the state court that this statement was not the product of interrogation. The evidence presented at the hearing supported a finding that petitioner spoke voluntarily when the detectives entered the interview room, before they asked him anything. Thus, this statement was admissible even though *Miranda* warnings had not yet been provided to petitioner. *See United States v. Colon*, 835 F.2d 27, 30 (2d Cir. 1987) (defendant's statement was spontaneous, and thus *Miranda* warnings were not required, where defendant "was not questioned, confronted with evidence, or even encouraged to be honest and tell the facts") *Wolfrath*, 576 F.2d at 973 n.6 ("since the statement which was litigated below was a gratuitously volunteered statement, *Miranda* itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures").

**\*15** The other statements at issue are the following: (1) a statement petitioner made, recorded by Sergeant Nicolosi, while Sergeant Nicolosi was filling out a prisoner activity log documenting prisoner's injuries, that petitioner had gotten into a fight a couple of days prior; and (2) the statement by petitioner that visible injuries to his face were due to a fall on ice in response to Detective Paglino asking what happened to petitioner's face. Respondent argues, in part, that the statements were "not self-incriminating" and the questions were part of routine booking and a prisoner's physical injuries

Case 9:18-cv-00981-MAD-TWD Document 27 Filed 04/22/21 Page 28 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

at time of booking are a valid administrative concern. (Res'p's Br. at 31.)

As noted above, the determination of whether a booking question falls within the pedigree exception to *Miranda* requires careful consideration of "both the question itself and its relationship to the suspected crime." *Sezanayev, 2018 WL 2324077, at \*12.* The state court, after conducting an evidentiary hearing (including evaluating credibility and the totality of the circumstances), found that the standard booking question regarding injury, which took place five days after the incident in question, was not designed to elicit an incriminating response. This Court finds no basis, in light of the record as a whole, to disturb that finding on habeas review.

However, even assuming that petitioner's constitutional rights had been violated by not suppressing these post-arrest statements regarding the source of his injuries, under the *Brecht* standard of review, petitioner's claim warrants no relief. The *Brecht* standard of harmless error review applies regardless of whether petitioner's rights were violated due to *Miranda* violations. The Supreme Court has held "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the ... standard set forth in *Brecht* ..., whether or not the state appellate court recognized the error and reviewed it for harmlessness [under the *Chapman* standard]." *Fry v. Piller, 551 U.S. 112, 121-22 (2007).* The *Brecht* standard asks "whether the error 'had a substantial and injurious effect or influence in determining the jury's verdict,' " *Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)* (quoting *Kotteakos v. United States, 328 U.S. 750, 776 (1946)*), and shifts the burden of proof from the state to the petitioner. *Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).* Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht, 507 U.S. at 637* (citing *United States v. Lane, 474 U.S. 438, 449 (1986)*). Thus, "[h]abeas relief is not appropriate when there is merely a 'reasonable probability' that trial error contributed to the verdict." *Bentley, 41 F.3d at 824* (citing *Brecht, 507 U.S. at 637*).

Here, the overwhelming evidence of petitioner's guilt renders any improper admission of petitioner's statements harmless error under *Brecht*. Aside from petitioner's statements regarding the cause of his injuries, multiple eyewitnesses testified at trial regarding petitioner continuing to assault

the victim, including hitting and striking him with a pipe, when the victim was unconscious on the ground (Tr. at 241-46, 634-36), video surveillance from the gas station corroborating portions of the eyewitness' testimony (Tr. at 163-64), testimony and video corroborating the fact that petitioner could have left the scene safely with his wife (Tr. at 241, 255-56, 261), and multiple 911 calls from eyewitnesses (Tr. at 244-45, 598-99). As a result, the Court is not convinced that petitioner's statements, even if improperly admitted, had any substantial or injurious influence on the jury's verdict. In sum, the Court concludes that this claim does not warrant habeas relief.

### 6. Sufficiency of the Evidence Claims

**\*16** Petitioner argues that he is entitled to habeas relief because there was insufficient evidence to support the jury's verdict. (Pet. at 15-16.)

#### a. Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging evidentiary sufficiency in a writ of habeas corpus. *Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir. 1997)* (quoting *Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)*). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007)* (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (internal quotation mark omitted) (quoting *Jackson, 443 U.S. at 324*)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 29 of 56

resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, the Court looks to New York law for the elements of attempted murder in the second degree and assault in the first degree.

In New York, "[a] person is guilty of murder in the second degree when, with intent to cause the death of another, he causes the death of such person." N.Y. Penal Law § 125.25(1), as amended by N.Y. Penal Law § 110.00. "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00. The New York Court of Appeals has consistently held that the intent to kill can be inferred from both a defendant's conduct and surrounding circumstances. *See People v. Bracey*, 41 N.Y.2d 296, 301 (1977); *see also Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) ("[A] conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility."). Finally, "[a] person is guilty of assault in the first degree when: [w]ith intent to cause serious physical injury to another person, he causes such injury to such person ... by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1).

### b. Application

Petitioner argues that the evidence was legally insufficient to support his convictions for attempted murder in the second degree and assault in the first degree.[13] Specifically, petitioner claims that, throughout the trial, witnesses were inconsistent and conceded that they were "prepped by the prosecution," and that the trial court gave a "faulty justification charge." (Pet. at 15-16.)

**\*17** Viewing the facts in the light most favorable to the prosecution, the Court finds that based on the evidence in the underlying record, a rational trier of fact could have certainly rejected petitioner's justification defense and found proof beyond a reasonable doubt of guilt. As discussed above,

the jury was presented with eyewitness testimony, video surveillance that corroborated witness testimony, photos of the victim's substantial injuries, and medical evidence establishing the injuries suffered, all of which could rationally support a guilty verdict.

Regarding petitioner's claim that there were inconsistencies among the witnesses' testimony, the Court notes that "[a]ll issues of credibility ... must be resolved in favor of the jury's verdict." *United States v. Riggi*, 541 F.3d 94, 108 (2d Cir. 2008). In addition, as the Second Circuit has explained, "it is well-settled that when reviewing the sufficiency of the evidence we 'defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony.' " *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) (quoting *United States v. Bala*, 236 F.3d 87, 93-94 (2d Cir. 2000)). Accordingly, the Court rejects petitioner's suggestion that the jury's determination of guilt is based on insufficient evidence due to inconsistencies between the witnesses' testimony.

The Court likewise rejects petitioner's claim that there was insufficient evidence to establish guilt because the witnesses were all prepared by the prosecution. The Court notes that the respondent opposes this claim, both as procedurally defaulted and on the merits, stating that "the witnesses did not admit to having the prosecutor tailor their testimony." (Resp't's Br. at 34.) The Court finds nothing in the underlying record to support petitioner's contention that the prosecution's witnesses were prepared in a manner that caused petitioner's conviction to be based on insufficient and/or unreliable evidence.

The Court turns to petitioner's argument regarding the allegedly faulty justification charge. Petitioner takes issue with the fact that "during charging the elements of justification [the trial judge] instructed the jury to find [petitioner] guilty by telling the jury to hold #3 in [their] head for a moment where #3 was that [petitioner] was not justified." (Pet. at 16.) Contrary to petitioner's assertion, a review of the transcript reveals that the trial judge did not instruct the jury to find petitioner guilty during his justification instruction. The at-issue statement was made by the trial judge after the jury had requested that he re-read the portions of the jury charge that explained the elements of each charged crime. (Tr. at 872.) The trial judge agreed to re-read those portions of the instructions, and told the jury that he would re-read the justification instruction after re-

Case 9:18-cv-00981-MAD-TWD Document 27 Filed 04/22/21 Page 30 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

reading the elements of the charged crimes. (*Id.*) Accordingly, when the trial judge reached the lack of justification as an element of murder in the second degree, he instructed the jury to "hold [that] in [their] head[s] for a moment," because he intended to instruct on justification after completing his other instructions. (*Id.* at 874-75.) The Court finds nothing in the trial court's statement that suggested to the jury that they should reject petitioner's justification defense.

Even assuming there was an error in the jury instruction, jury instructions only violate due process if they "fail[ ] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "[A] state prisoner making a claim of improper jury instructions faces a substantial burden." *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). The petitioner must establish that " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.' " *Id.* at 1200-01 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"). Furthermore, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Middleton*, 541 U.S. at 437 (internal quotation marks omitted) (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)).

**\*18** In this case, the Court finds that the trial court's instructions on justification were not erroneous and certainly not a due process violation. The state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court finds that petitioner's sufficiency of the evidence claim (including the arguments regarding the jury charge) does not warrant habeas relief.

### 7. Sentencing Claim

Petitioner claims that his eighteen-year sentence violates his constitutional rights because it is "harsh and excessive," that it was augmented because he chose to proceed to trial, and that the judge at sentencing erroneously found that he showed

no remorse and failed to take into consideration a petition showing support for petitioner. (Pet. at 16-17.)

When a petitioner is claiming that his sentence is harsh and excessive, for purposes of habeas review, "[n]o federal constitutional issue is presented [if] ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003).

Here, petitioner's sentence was within the permissible range prescribed by New York state law, and thus there is no federal question for habeas review. As discussed above, petitioner was convicted of attempted murder in the second degree and assault in the first degree, both class B felonies. *See* N.Y. Penal Law § 125.25(1), § 110.00; § 120.10(1). He was sentenced as a prior felony offender, due to a prior conviction of criminal sale of a controlled substance in the third degree. (S. at 11-12.) According to New York state law, at the time his sentencing, petitioner was facing a maximum term of twenty-five years of imprisonment. Thus, petitioner's sentence of eighteen years was within the statutorily prescribed range and raises no constitutional concerns. *See* N.Y. Penal Law § 70.06(6)(a).

Further, although it is clear that a petitioner may not be punished for going to trial, *see Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), there is no evidence here that the trial court imposed a harsher sentence because petitioner chose to proceed to trial. Petitioner argues that the fact that his sentence exceeded the state court's pre-trial plea offer demonstrates that the trial court's sentence was vindictive. However, "the mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citing *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976)). Petitioner also argues that the trial court's statement that "sadly, what is fair after trial, now that I know the extent, now that I know everything that happened, now that I have seen the videotape and that we saw Mr. Maithya's testimony, I'm afraid that what is fair after trial is not the same thing that was fair before trial," (S. 20), evidences vindictive sentencing. These statements show only that the trial court's sentence properly reflected the evidence presented at trial, and do not suggest

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 31 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

that the sentence was punishment for the decision to proceed to trial.

On the issue of remorse, after petitioner stated that he had remorse for his actions, the trial court responded, "Yeah. Everybody is going to suffer, both [the victim's and petitioner's] families. I wish that Robert Moore was there that night. This Robert Moore sounds like he wouldn't have done what you did." (S. at 18.)

**\*19** In short, a review of the sentencing transcript reveals that the trial court acknowledged that proceeding to trial was petitioner's absolute right, that the court had reviewed all of the documents submitted on petitioner's behalf, and that the sentence was based on a multitude of factors, including the facts presented at trial, and petitioner's prior convictions, without any suggestion that petitioner had no remorse. (S. at 18-21.) Accordingly, this claim does not provide a basis for habeas relief in this case.

### 8. Grand Jury Claims

Petitioner claims that he is entitled to habeas relief because of errors during the grand jury presentation. First, as previously analyzed in the Court's discussion of petitioner's prosecutorial misconduct claim, petitioner argues that Detective Paglino's perjured testimony in the grand jury made the indictment fundamentally flawed. [14] (Pet. at 17.) Second, petitioner argues that he is entitled to relief due to the prosecution's failure to "charge the grand jury with the justification defense." (Pet. at 18-19.)

Generally, "claims of deficiencies in a state grand jury proceeding cannot support a collateral attack under 28. U.S.C. § 2254." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Warren v. Ercole*, No. 07 CV 3175 (JG), 2007 WL 4224642, at \*10 (E.D.N.Y. Nov. 27, 2007) (stating that "claims based on the sufficiency of the evidence presented to the grand jury are not cognizable under federal law"). Indeed, "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez*, 865 F.2d at 32. In any event, the Court finds that any errors in Detective Paglino's grand jury testimony had no prejudicial effect, as the grand jury viewed the video themselves. Further, the trial jury was made aware of this issue in the grand jury during the cross-examination of Detective Paglino:

Question: So it's your testimony today that the portions of the video you saw, you never saw the pipe in Mr. Moore's hand, is that correct?

Answer: That's correct.

Question: Now, you had an opportunity to testify before the grand jury, correct?

Answer: Correct.

Question: And when you testified before the grand jury you had an opportunity to tell them what happened during your investigation.

Answer: Correct.

\* \* \*

Question: And on that day you were asked this question. 'Question: on that video can you tell us what you observed? Answer: I observed Solomon, Africa, strike Robert Moore, Israel, on the back of the head with some sort of silver pipe, some object. At which time after, Israel got his wits about him, he went after him, they got into a fight, he eventually took possession of that pipe, and used it to beat Africa.'

**\*20**                    \* \* \*

Question: Do you recall saying that?

Answer: I do.

\* \* \*

Answer: My testimony in the grand jury was based on what I was able to observe in portions of the video as well as my further investigation with witnesses.

(Tr. at 726-29.)

Therefore, this discrepancy in the grand jury was put before the trial jury, allowing them to consider it in determining whether to find Detective Paglino credible. Accordingly, this testimony does not undermine the petitioner's conviction in any way, and provides no basis for habeas relief.

Finally, petitioner's claim that he is entitled to habeas relief because the grand jury was not read a justification defense charge is meritless. "[A] petit jury's guilty verdict renders harmless any error in the grand jury proceedings." *Price v.*

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 32 of 56

Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)

*Grenier,* No. 98 Civ. 2601 (LTS)(MHD), 2003 WL 22890404, at *6 (S.D.N.Y. Oct. 16, 2003) (citing *United States v. Mechanik,* 475 U.S. 66, 70-71 (1986)). Therefore, petitioner's conviction by a trial jury, who received a complete instruction on the justification defense, renders the alleged issues in the grand jury presentation harmless.

IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3717580

---

**Footnotes**

1   During trial, it was explained that, in the neighborhood, petitioner was commonly referred to as "Israel" and Maithya was commonly referred to as "Africa." (Tr. at 217-18.)

2   "Tr." refers to the trial transcript. (ECF Nos. 12-10 – 12-12.)

3   Ex. 14 refers to People's Exhibit 14, which contains segments from the gas station surveillance video. Because the men moved behind a gas pump out of view of the camera and the recording system skipped multiple times due to its age and low quality, the video does not capture the complete encounter between petitioner and Maithya. (Tr. at 216-20.)

4   The three 911 calls were made by Morgan, Curtis Singleton ("Singleton"), and gas station employee Sean Ali ("Ali"), all of which were played for the jury and all three callers testified at trial.

5   "H." refers to the transcript of the pre-trial suppression hearing. (ECF Nos. 12-7 to 12-9.)

6   Office Pellegrino testified that Sergeant Nicolosi asked about the injury while filling out a Prisoner Activity Log, which included routine booking questions, to make sure that prisoners were not injured while in police custody. (Tr. at 395.)

7   "S." refers to the transcript of petitioner's sentencing. (ECF No. 12-14.)

8   The Court uses the pagination assigned by the electronic case filing system when citing to the Appellate Division brief and the supplemental Appellate Division brief.

9   The Court uses the pagination assigned by the electronic case filing system when citing to the respondent's brief and its accompany exhibits.

10  The portion of petitioner's prosecutorial misconduct claim regarding his pre-arrest silence is addressed in further detail in petitioner's claim regarding improper questioning about petitioner's silence.

11  Even if cognizable under federal law, the claim regarding pre-arrest silence would fail for the same reasons that the post-arrest silence claim fails (as discussed *infra*).

12  This exception is known as the "routine booking question exception," "booking exception," or "pedigree exception." *See Rosa v. McCray,* 396 F.3d 210, 214, 221-22 (2d Cir. 2005).

13  In the alternative, petitioner also asserts that the verdict was against the weight of the evidence. A "weight of the evidence" claim, however, is based on state law, *see Correa v. Duncan,* 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process

**Moore v. Attorney General of New York, Not Reported in Fed. Supp. (2019)**

Case 9:18-cv-00981-MAD-TWD    Document 27    Filed 04/22/21    Page 33 of 56

principles."), and the Court cannot consider a purely state law claim on federal habeas review, *see* 📑 *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law...."). Therefore, this claim is not reviewable.

14      This claim is argued more cohesively in petitioner's supplemental brief in conjunction with the state court direct appeal. In the supplemental brief, petitioner argued that, during the grand jury presentation, Detective Paglino stated that he viewed surveillance video of the incident and saw petitioner strike the victim with a pipe, but then at the suppression hearing Detective Paglino said he did not see petitioner with the pipe in his hands. (*See* Suppl. App. Div. Br. at 8-10.) In response, the People argued on appeal that at the suppression hearing, Detective Paglino explained that his grand jury testimony was based on both the video surveillance and what he learned from interviewing eyewitnesses, and that the grand jury viewed the video itself so any testimony describing the video did not prejudice petitioner. (*See* People's Reply to Suppl. App. Div. Br. at 5-9, ECF No. 12-4.)

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   19

2012 WL 194978
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Spiridon ANTHOULIS, Petitioner,
v.
State of NEW YORK and the Attorney General
of the State of New York, Respondents.

No. 11 Civ.1908(BMC).
|
Jan. 23, 2012.

**Attorneys and Law Firms**

Raymond J. Aab, New York, NY, for Petitioner.

Jodi A. Danzig, New York State Attorney Generals Office
—Generic, Office Of The NY State Attorney General, New
York, NY, for Respondents.

### MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

 **\*1** On January 26, 2007, pursuant to a plea agreement,
petitioner pleaded guilty to one count of Grand Larceny in
the Third Degree (a felony), and one count of Failing to Pay
Prevailing Wages (a misdemeanor). For the grand larceny
charge, petitioner was sentenced to time served and five years'
probation. He received a conditional discharge on the failure
to pay prevailing wages charge and agreed to a five-year bar
from performing public work in New York State. He was also
ordered to pay restitution "of no more than" $7,250,095.03.
The case is before me on petitioner's petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2254. The petition
is dismissed without prejudice as unexhausted.

### BACKGROUND

Petitioner operated 4–A General Construction Corp. ("4–
A"), which contracted with the New York City Housing
Authority ("NYCHA") to renovate kitchens and bathrooms
and to modify NYCHA apartments for handicapped access.
Under 4–A's contract with NYCHA, 4–A was required to
pay its workers "prevailing wages," which were determined

based on the workers' job classifications. The charges against
petitioner arose from his failure to pay 4–A's workers the
proper prevailing wages.

After over a year of negotiations, petitioner waived his right
to proceed by indictment and pleaded guilty to a two-count
information pursuant to a written plea agreement. Count 1
charged Grand Larceny in the Third Degree ( Penal Law
§ 155.35), a felony, by wrongfully obtaining payment for
construction work from NYCHA. Count 2 charged Failure to
Pay Wages under Labor Law § 198–a(1), a misdemeanor,
by failing to pay the proper prevailing wages earned by his
company's manual laborers. The felony carried a maximum
sentence of seven years; the misdemeanor carried a maximum
sentence of one year.

Petitioner acknowledged in the written plea agreement and
in his allocution that he was 4–A's chief operating officer or
field construction supervisor. He further acknowledged that
the certified payroll reports 4–A submitted to NYCHA were
false because they incorrectly reported the hours and work
classification (which was used to determine the prevailing
wage) of the company's workers, and because they omitted
certain workers who were paid in cash "off the books." [1] He
also admitted that he created a number of other corporations,
including a 4–A subcontractor of which his brother-in-law
was the President, that these corporations were used to obtain
cash to pay 4–A's workers, and that the corporations were not
reported on the certified payroll records filed with NYCHA.
He acknowledged an obligation to pay restitution "of no more
than" $7,260,095.03, the computation of which was annexed
as an exhibit to the plea agreement, which was the amount
arrived at pursuant to an audit conducted by Pricewaterhouse
Coopers LLP (the "PWC audit").

In exchange for entry into the agreement, the New York
Attorney General agreed, among other things, not to
prosecute him for any further crimes related to the same
conduct, and to recommend to the sentencing court: (a) on
the felony, no more than six months custody, five years
probation, and restitution up to the stated amount; and (b) on
the misdemeanor, a conditional discharge.

 **\*2** After pleading guilty, but prior to sentencing, petitioner
retained a new attorney and filed a motion to withdraw his
guilty plea pursuant to CPL § 220.60. In his motion, he
claimed that: (1) there was no legal or factual basis for the
grand larceny charge; (2) he had a valid statute of limitations

defense to the labor law charge; and (3) some portion of the restitution was improper as a matter of law. In addition, he raised a claim of ineffective assistance of his former counsel, arguing that his attorneys did not advise him on any of these issues before he entered his guilty plea, and that he would not have pleaded guilty if his attorneys had adequately advised him. Thus, petitioner argued, he did not enter into a knowing and intelligent guilty plea and "he was denied the effective assistance of his criminal attorney when he executed the plea agreement and pled guilty."

In support of the motion, petitioner filed affidavits from one of his former attorneys and himself. The affidavits discussed their communications, the former attorney's lack of investigation into potential defenses to the charges, and the negotiations with the Attorney General that led up to petitioner's guilty plea. They were offered to show that petitioner had not been made aware of these defenses when he determined to plead guilty. In addition, petitioner submitted an affidavit from a labor consultant who was retained by petitioner's new attorney. The consultant described post-plea investigations he had undertaken to support the conclusion that the PWC audit on which the Attorney General had relied in pressing the charges against petitioner was flawed, principally because it did not recognize that the law allowed the "splitting" of work classifications on a daily basis for purposes of computing a prevailing wage.

The trial court denied the motion, ruling (1) that petitioner "received an advantageous plea and the record [did] not cast doubt on the apparent effectiveness of counsel"; and (2) that he "voluntarily, knowingly, and intelligently pled guilty on the advice of competent attorneys after the court fully advised him of the consequences of his plea." The trial court did not discuss or refer to the off-the-record evidence (*i.e.,* the affidavits or 4–A's contract with NYCHA) that petitioner had submitted in support of the motion.

The Appellate Division affirmed petitioner's conviction. *People v. Anthoulis,* 78 A.D.3d 854, 910 N.Y.S.2d 370 (2d Dept.2010), *lv. app. denied,* 16 N.Y.3d 827, 921 N.Y.S.2d 191, 946 N.E.2d 179 (2011). It ruled as follows:

> [T]he Supreme Court providently exercised its discretion in denying his motion to withdraw his plea of guilty. The defendant entered his plea of guilty knowingly, voluntarily, and intelligently, having reached a favorable plea agreement with the assistance of competent counsel, and the defendant indicated that he was satisfied with counsel's representation. In addition, there was no evidence

to support the defendant's belated claim of innocence or to indicate that he was induced to plead guilty as a result of fraud or mistake.

> **\*3** The defendant's contention that he was deprived of the effective assistance of counsel rests mainly on matter dehors the record and, thus, cannot be reviewed on direct appeal. To the extent this contention is reviewable on the record before us, we find that defense counsel provided meaningful representation with respect to the defendant's plea of guilty.

> Review of the other claims raised by the defendant on appeal have been forfeited as a result of his plea of guilty.

*Id.* at 854–55, 910 N.Y.S.2d 370 (internal citations omitted).

Petitioner filed the instant petition on April 19, 2011. He asserts seven grounds for relief: (1) he received ineffective assistance of counsel prior to pleading guilty; (2) because of the ineffective assistance of counsel, he did not knowingly and intelligently plead guilty; (3) the larceny charge is invalid; (4) the statute of limitations for the failure to pay prevailing wages charge expired; (5) the PWC audit was erroneous; (6) the criminal restitution judgment improperly included interest and penalties; and (7) the Attorney General acted in bad faith by pursuing an invalid larceny charge, a time-barred failure to pay prevailing wages charge, and by seeking unlawful restitution.

## DISCUSSION

### I

Petitioners in state custody "must exhaust [their] remedies in state court [before a federal court may grant them habeas relief]." O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see* 28 U.S.C. § 2254(b), (c). This requirement is based upon "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims." Rhines v. Weber, 544 U.S. 269, 273, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). To properly exhaust a claim, petitioners must "give state courts *a fair* opportunity to act on [it]." O'Sullivan, 526 U.S. at 844, 119 S.Ct. 1728, 144 L.Ed.2d 1. They must "fairly present[ ]" their claims to the state courts by

"appris[ing the courts] of both the factual and legal premises of the claim." *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (internal quotation marks omitted). In addition, petitioners must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan.* 526 U.S. at 845, 119 S.Ct. 1728, 144 L.Ed.2d 1. They do not, however, have to "invoke[ ] every possible avenue of state court review." *Galdamez v. Keane,* 394 F.3d 68, 73 (2d Cir.2005).

In New York, the applicable review process for an ineffective assistance of counsel claim depends on the nature of the alleged attorney error underlying the claim. To properly exhaust a claim that relies on errors or omissions that are apparent from the record of trial or pretrial proceedings, petitioner must raise it on direct appeal to the Appellate Division and then seek leave to appeal to the Court of Appeals. In contrast, to properly exhaust an ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record, petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division. *See Sweet v. Bennett,* 353 F.3d 135, 140 (2d Cir.2003); *Caballero v. Keane,* 42 F.3d 738, 740–41 (2d Cir.1994); *Reves v. Phillips,* No. 02 Civ. 7319, 2003 U.S. Dist. LEXIS 52, at *9–12,2003 WL 42009 (S.D.N.Y. Jan. 6, 2003); *People v. Brown,* 45 N.Y.S.2d 852, 853–54, 410 N.Y.S.2d 287, 382 N.E.2d 1149 (1978).

**\*4** Here, the Appellate Division held that petitioner's ineffective assistance of counsel claim "rest[ed] mainly on matter dehors the record," and that, "[t]o the extent [it was] reviewable on the record, [it was without merit because] defense counsel provided meaningful representation with respect to the [petitioner's] plea of guilty." *Anthoulis.* 78 A.D.3d at 854–55, 910 N.Y.S.2d at 371 (internal citations omitted). Because the Appellate Division held that the claim was partly outside the record and partly on the record, I previously entered an Order noting the potential that petitioner's claim was, at least partially, unexhausted. *See* Order dated October 14, 2011. I invited respondents to inform the Court whether they were waiving the exhaustion defense and, if not, how they proposed to proceed. I also gave petitioner an opportunity to respond.

Respondents subsequently "assert[ed] the defense of non-exhaustion" and requested that I deny the entirety of petitioner's ineffective assistance of counsel claim as meritless. Petitioner filed a reply in which he argued that his claim was exhausted because it was fully developed on his motion to withdraw his guilty plea and because the trial court ruled on it on the merits. According to him, the Appellate Division erred by holding that his claim was partially outside the record. Alternatively, petitioner argued that, if I determine his ineffective assistance of counsel claim is partially unexhausted, I "should stay this proceeding until the petitioner completes the exhaustion of additional claims in the New York courts."

New York law is clear that when a CPL § 220.60(3) motion to withdraw a guilty plea is based on matters outside of the trial and pretrial record, the trial court is under no obligation to consider the extraneous evidence in determining the motion. When ruling on a motion to withdraw a guilty plea, the trial court is "entitled to rely on the record before [it] in order to insure that guilty pleas are accorded finality whenever possible." *People v. Ramos,* 63 N.Y.2d 640, 642–43, 479 N.Y.S.2d 510, 468 N.E.2d 692 (1984). In *Ramos,* the defendant moved to withdraw his guilty plea because counsel allegedly provided him with erroneous advice on the sentencing ramifications of his plea. The advice was not apparent on the record of his plea. The Court of Appeals held that the trial court acted within its discretion in denying the motion because "defense counsel's misadvice ... was not placed on the record at the time of the plea." Id According to the Court, this off the record error was "not entitled to judicial recognition" on a motion to withdraw a guilty plea, and the defendant's related ineffective assistance of counsel claim "should have been raised in a posttrial [*i.e.,* a § 440.10] application." *Id.*

The trial court and the Appellate Division properly followed the approach mandated by *Ramos* in disposing of petitioner's ineffective assistance of counsel claim. The transcript of his plea allocution contains no suggestion of involuntariness or ineffective assistance; indeed, petitioner does not contend otherwise. That is effectively what the state courts held— there was no on-the-record claim of ineffective assistance or an involuntary plea. Only if the courts had considered the extrinsic evidence petitioner relied on to support his claim —*i.e.,* the affidavits and 4-A's contract with NYCHA— could questions be raised as to involuntariness or ineffective assistance. No doubt, the state courts could have considered

that extrinsic evidence under 🔖 CPL § 220.60(3) as a matter of discretion, but state law did not require them to do so, and they acted consistently with state procedural law in relegating petitioner to a 🔖 CPL § 440.10 motion to raise such claims. This procedure is entitled to recognition on habeas review. *Cf.* *Beard v. Kindler,* ––– U.S. ––––, ––––, 130 S.Ct. 612, 618, 175 L.Ed.2d 417 (2009) ("a discretionary rule can be "firmly established" and "regularly followed"—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.").

**\*5** Petitioner did not avail himself of this opportunity. It remains open to him to have the state courts consider his ineffective assistance claim based on off-the-record evidence on the merits. The claim is therefore unexhausted.

II

The issue thus becomes what to do with the petition. Where a petitioner raises both exhausted and unexhausted claims, I have three options. *See Spurgeon v. Lee,* No. 11–CV–00600, 2011 U.S. Dist. LEXIS 35252, at \*3–4, 2011 WL 1303315 (E.D.N.Y. Mar. 31, 2011). First, I can dismiss the entire petition without prejudice as a mixed petition. This would give petitioner the opportunity to exhaust the unexhausted portion of his ineffective assistance claim and then re-file a 🔖 § 2254 petition raising all of his claims. *See Sookoo v. Heath,* No. 09 Civ. 9820, 2011 U.S. Dist. LEXIS 43960, at \*18–19 (S.D.N.Y. Apr. 21, 2011); *Abrahams v. Comm'r of Corr.,* No. 10 Civ. 519, 2010 U.S. Dist. LEXIS 128897, at \*21 (D.Conn. Dec. 7, 2010). Second, if I determine that petitioner's unexhausted claim is "plainly meritless," I can deny it on the merits and rule on petitioner's remaining exhausted claims. *See Spurgeon,* 2011 U.S. Dist. LEXIS 35252, at \*3–4; 2011 WL 1303315 *see also* 🔖 28 U.S.C. § 2254(b)(2). Finally, I can "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." 🔖 *Rhines,* 544 U.S. at 275–77, 125 S.Ct. 1528, 161 L.Ed.2d 440. Respondent argues that I should use the second option; petitioner argues for the third.

I cannot say that the unexhausted portion of petitioner's ineffective assistance of counsel claim is "plainly meritless." Nor can I grant petitioner a stay while he exhausts his ineffective assistance of counsel claim. This latter option is only available if "(1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not 'plainly meritless,' and (3) the petitioner has not engaged in intentionally dilatory litigation tactics." *Spurgeon,* 2011 U.S. Dist. LEXIS 35252, at \*4; 2011 WL 1303315 *see also* *Rhines,* 544 U.S. at 275–77, 125 S.Ct. 1528, 161 L.Ed.2d 440. Although "good cause" has not been defined, "most courts have deemed it to require that the petitioner show that 'some factor external to the petitioner gave rise' to his failure to assert the claims in state court." *Williams v. Marshall,* No. 09 Civ. 7411, 2011 U.S. Dist. LEXIS 36484, \*6–7, 2011 WL 2175810 (S.D .N.Y. Mar. 30, 2011). Other courts have used a more lenient standard and instead looked to see whether some "reasonable confusion" caused the failure to exhaust. *Id.* at \*7 (citing 🔖 *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

I do not need to determine which standard applies because, even under the more lenient standard, petitioner has not even attempted to demonstrate any cause for his failure to exhaust his claims. Petitioner ignored the implications of the Appellate Division's holding and prematurely sought federal habeas review of an unexhausted claim. Under these circumstances, a stay would be inappropriate. [2]

*CONCLUSION*

**\*6** The petition is denied without prejudice and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 194978

## Footnotes

1     According to petitioner, he prepared the reports and ultimately submitted them to NYCHA; his wife signed the reports before a notary.

2     Dismissing petitioner's case, rather than staying it, will not foreclose federal habeas review of the petition. First, this is a dismissal without prejudice for failure to exhaust; I am not deciding any of petitioner's claims on the merits. Accordingly, the rule against second or successive habeas petitions, *see* 28 U.S.C. § 2244(b), will not be implicated should petitioner ultimately re-file after properly exhausting, *see Slack v. McDaniel,* 529 U.S. 473, 485–86, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (applying pre-AEDPA standards); *Graham v. Costello.* 299 F.3d 129, 132–33 (2d Cir.2002); *Turner v. Artuz,* 262 F.3d 118, 122 (2d Cir.2001) (per curiam). Second, assuming petitioner proceeds in a prompt manner, the one-year statute of limitations for § 2254 cases, see 28 U.S.C. § 2244(d), will not expire. As relevant here, the one-year began to run after petitioner's conviction became final because that is when his time for seeking direct review expired. *See id.* § 2244(d) (1)(A). The operative date is "90 days after the New York Court of Appeals denie[d] leave to appeal, which is when the petitioner's time to apply for a writ of certiorari to the United States Supreme Court expire[d]." *Rivera v. Cuomo,* 649 F.3d 132, 139 (2d Cir.2011). The Court of Appeals denied leave to appeal on March 24, 2011. Petitioner's one-year therefore began to run on June 22, 2011, and he has until June 22, 2012 to re-file his § 2254 petition. Moreover, assuming petitioner files his § 440 motion before June 22, 2012, the one-year period will be tolled while that motion is pending in state court. See 28 U.S.C. § 2244(d)(2); *see also Bennett v. Artuz,* 199 F.3d 116, 122–23 (2d Cir.1999); *Sumpter v. Sears,* 09–CV–00689 (KAM), 2011 U.S. Dist. LEXIS 766, at *9,2011 WL 31188 (E.D.N.Y. Jan. 5, 2011).

---

**End of Document**            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-00981-MAD-TWD Document 27 Filed 04/22/21 Page 39 of 56

Flores v. Officer in Charge, Buffalo Federal Detention Facility, Not Reported in...

2014 WL 1568843
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Edison FLORES, Petitioner,
v.
OFFICER IN CHARGE, BUFFALO FEDERAL
DETENTION FACILITY, Respondent.

No. 11 Civ. 7977(RA).
|
Signed April 17, 2014.

*OPINION AND ORDER*

RONNIE ABRAMS, District Judge.

**\*1** *Pro se* petitioner Edison Flores brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for sexual abuse and endangering the welfare of a child on the grounds that he was denied effective assistance of counsel. For the following reasons, the petition is dismissed without prejudice as unexhausted.

**BACKGROUND**

Following a non-jury trial in New York State Supreme Court, Flores was convicted of two counts of sexual abuse in the first degree and one count of endangering the welfare of a child, all relating to his conduct with his minor step-granddaughter S.S. [1] Although defense counsel cross-examined the People's witnesses and argued on Flores's behalf during an opening statement and summation, it did not present any affirmative evidence at trial. On January 29, 2009, Flores was sentenced to concurrent prison terms of three and one-half years for each sexual-abuse count and one year for endangering the welfare of a child, as well as ten years of post-release supervision. Flores filed a direct appeal to the New York Appellate Division, First Department, challenging his conviction on the grounds that he was denied effective assistance of counsel. Specifically, he argued that his trial counsel "effectively conceded [his] guilt of all counts charged before and throughout the bench trial, and made no effort to subject the People's case to meaningfully adversarial testing." (Pet'r's Br. 15.)

On May 25, 2010, the Appellate Division held that Flores's claim was "unreviewable on direct appeal because it involve[d] matters outside the record concerning defense counsel's choice of trial strategy" and dismissed his appeal. *People v. Flores,* 900 N.Y.S.2d 647, 647 (App.Div.2010). In so doing, it further noted that, "[a]lthough the present, unexpanded record is not conclusive on the matter, it suggests that defendant agreed with the very actions of counsel about which he now complains. In any event, defendant has not demonstrated " 'the absence of strategic or other legitimate explanations' for the manner in which counsel conducted the trial." *Id.* (citation omitted). On June 9, 2010, Flores sought leave to appeal to the New York Court of Appeals, which denied his application without opinion on August 18, 2010. *People v. Flores,* 15 N.Y.3d 804 (2010). The instant petition, dated October 31, 2011, was filed with the Court on November 4, 2011. [2]

**DISCUSSION**

"[A] state prisoner seeking federal habeas relief must first 'exhaus[t] the remedies in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address and correct alleged violations of [the] prisoner's federal rights.' " *Walker v. Martin,* 131 S.Ct. 1120, 1127 (2011) (alterations in original)). In New York, "[t]o properly exhaust an ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record, petitioner must raise it as part of a motion to vacate judgment under CPL § 440 .10 and then seek leave to appeal to the Appellate Division." *Anthoulis v. New York,* No. 11 Civ.1908(BMC), 2012 WL 194978, at \*3 (E.D.N.Y. Jan. 23, 2012) (citing *Sweet v. Bennett,* 353 F.3d 135, 140 (2d Cir.2003)).

**\*2** As noted above, the Appellate Division concluded that Flores's ineffective-assistance-of-counsel claim was "unreviewable on direct appeal" because it related to matters outside the record, *Flores,* 900 N.Y.S.2d at 647, thus requiring him to raise the claim in a § 440.10 motion to vacate judgment. Having failed to do so, Flores has not properly exhausted his claim in state court. *See, e.g., Polanco v. Ercole,* No. 06 Civ. 1721(RMB)(DFE), 2007 WL 2192054, at \*6–7 (S.D.N.Y. July 31, 2007) (dismissing habeas petition claiming ineffective assistance of counsel as unexhausted where Appellate Division had determined on direct appeal

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 1

Case 9:18-cv-00981-MAD-TWD   Document 27   Filed 04/22/21   Page 40 of 56

Flores v. Officer in Charge, Buffalo Federal Detention Facility, Not Reported in...

that claim relied on evidence outside the record and petitioner had not filed a § 440.10 motion); *Butti v. Supt. Gowanda Corr. Facility,* No. 99 Civ. 1667(DLC), 2000 WL 280039, at *3 (S.D.N.Y. Mar. 14, 2000) (same).

Where a claim has not been exhausted, the federal court may dismiss the action without prejudice to the refiling of a habeas corpus petition, *see, e.g.,* *Camarano v. Irvin,* 98 F.3d 44, 46 (2d Cir.1996), or the action "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Although the Antiterrorism and Effective Death Penalty Act of 1996 "does not set out a standard for denying an unexhausted claim on the merits, and neither the Supreme Court nor the Second Circuit has established one," it has been noted that "[t]he various formulations bandied about in the Second Circuit's district courts have the common thread of disposing of unexhausted claims that are unquestionably meritless.... By contrast, state courts must, as a matter of comity, be afforded the opportunity to first pass upon any *habeas* claim that is at least potentially meritorious." *Keating v. New York,* 708 F.Supp.2d 292, 299 n. 11 (E.D.N.Y.2010) (collecting cases); *see also* *Rowe v. New York,* No. 99 Civ. 12281(GEL), 2002 WL 100633, at *5 (S.D.N.Y. Jan. 25, 2002) ("[I]t cannot be said that [petitioner's] unexhausted claim of ineffective assistance of counsel is 'so patently meritless that [it is] destined for denial.' " (third alteration in original)). On the current record, the Court cannot conclude that Flores's claim is so plainly meritless.

Ineffective assistance of counsel claims are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Pursuant to *Strickland,* the petitioner must first demonstrate that defense counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and second, there must be a "reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different." *Id.* at 688, 694. The Court shares the Appellate Division's view that evaluation of Flores's claim requires further development of the record as to whether his attorney's trial strategy was objectively reasonable. *See* *Rose v. Lundy,* 455 U.S. 509, 519 (1982) ("[F]ederal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review."); *Powers v. Bartlett,* No. 08 Civ. 7733(DC), 2009 WL 980266, at *4 (S.D.N.Y. Apr. 13, 2009) (denial of habeas petition containing unexhausted claim on merits was "unwarranted ... because of the undeveloped factual record").

**\*3** In this case, Flores claims that his trial counsel was ineffective because he "volunteered that he had no defense to any of the charges"; "effectively sat mute as the witnesses were called"; "never sought to challenge the damning accusations the children made"; and "explicitly endorsed [the complainants'] credibility." (Pet'r's Br. 21–22.) Based on the current record, it is unclear whether professional judgment or "oversight, carelessness, ineptitude, or laziness" motivated counsel's conduct. *Eze v. Senkowski,* 321 F.3d 110, 112, 136 (2d Cir.2003) (remanding for hearing for allegedly ineffective counsel to "explain her trial strategy"). Indeed, the need for additional information is illustrated by the fact that Flores is left to speculate about the trial strategy utilized by his attorney. (*See* Pet'r's Br. 19, 26 & n. 7 (suggesting that counsel "appeared" and "seem[ed]" to use the trial as a forum to argue for leniency at sentencing).)

"[S]trategic choices made by counsel after thorough investigation ... are virtually unchallengeable, and there is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Gersten v. Senkowski,* 426 F.3d 588, 607 (2d Cir.2005) (internal quotation marks and citation omitted) (alteration in original)). Nonetheless, based on the present record, the Court cannot determine whether Flores's trial counsel's course of action was based on reasonable professional judgment. *See* *Eze,* 321 F.3d at 112–13 (noting certain omissions by trial counsel were of "serious concern" but that the court "lack[s] the benefit of an explanation of [petitioner's] trial counsel's reasoning and cannot conclude now that no plausible trial strategy justified [counsel's] actions") (citing *Sparman v. Edwards,* 154 F.3d 51, 52 (2d Cir.1998)). Thus, the Court concludes that Flores's claim is not "unquestionably meritless" such that it would be appropriate to deny it on the merits.

## CONCLUSION

For the foregoing reasons, the petition is dismissed without prejudice for failure to exhaust its sole claim. Because Flores has not made a substantial showing of the denial of a constitutional right, appellate review is not warranted. *See* 28 U.S.C. § 2253(c)(2); *Tankleff v. Senkowski,* 135 F.3d 235,

241 (2d Cir.1998). Pursuant to 🔖 28 U.S.C. § 1915(a)(3), the Court further finds that any appeal of this Opinion and Order would not be taken in good faith. *See* 🔖 *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to dismiss the petition and close the case,

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1568843

## Footnotes

1      Pursuant to 🔖 New York Civil Rights Law § 50–b, the identity of a victim of sexual assault shall be treated as confidential.

2      Flores has attached the appellate brief he submitted on his appeal to the New York Appellate Division to his habeas petition bat cites no other grounds on which he is seeking relief in the petition. The Court thus treats the arguments made in that brief as the basis for which he is seeking habeas relief and references "Pet'r's Br." accordingly.

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

2002 WL 100633
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

George ROWE, Petitioner,
v.
PEOPLE OF THE STATE OF
NEW YORK, Respondent.

No. 99 CIV 12281 GEL.
|
Jan. 25, 2002.
|
As Amended March 4, 2002.

**Attorneys and Law Firms**

George Rowe, New York, NY, pro se.

Bruno V. Gioffre, Jr., Assistant Attorney General (Eliot Spitzer, Attorney General of the State of New York), New York, NY, for Respondent.

OPINION AND ORDER

LYNCH, District J.

**\*1** Petitioner George Rowe applies to this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he was denied the right to effective assistance of trial counsel and that his guilt was not proven beyond a reasonable doubt. On December 13, 2001, United States Magistrate Judge Ronald L. Ellis, to whom the case had been referred, issued a Report and Recommendation ("R & R"), recommending that the petition be dismissed in part without prejudice, for lack of exhaustion of state remedies, and in part with prejudice, for likelihood of procedural default. The R & R also instructed the parties that objections to the recommendation must be filed by December 27, 2001.

The Court received objections from Rowe on December 27, 2001. In that submission, Rowe does not address the procedural issues discussed in the R & R, but instead reiterates the arguments in support of his claims on the merits. Rowe also expressed discontent with the short time frame within which he was required to file his opposition to the R & R, with what he claimed was a failure to give him adequate notice of that deadline, and with the alleged failure of the District

Attorney's office to address mail regarding this case to his correct mailing address.

Rowe's frustration with these logistical issues is understandable—having given this Court formal notice of his change of address on February 29, 2000, he can certainly reasonably expect that the District Attorney's office would use that address in all official correspondence concerning this case. Moreover, Judge Ellis, responding to a similar complaint by Rowe, specifically ordered respondent to do exactly that. *See Rowe v. New York,* No. 99 Civ. 12281(DLC) (RLE) (S.D.N.Y. July 26, 2000) (docket entry no. 11). To the extent that future correspondence with the petitioner is required in this case, the District Attorney is, once again, ordered to use the address that officially has been entered on the Court's docket. As for the ten-day time period within which to file objections to the R & R, Congress has prescribed that period by statute, 28 U.S.C. § 636(b)(1), Judge Ellis' R & R provided clear notice of the deadline, and Rowe was able to and did meet the deadline with his objections.

Nevertheless, the Court is authorized to extend the deadline for filing objections, and under other circumstances would be inclined to construe Rowe's objections liberally as a request for additional time. In this case, however, Rowe's arguments on the merits of his claims are not responsive to the R & R's rather technical conclusions concerning habeas procedure, and the Court therefore concludes that an extension of time for him to elaborate on those arguments is unwarranted. In view of the Court's disposition of the matter, Rowe will have a further opportunity, if he wishes, to address the merits of the case, and to invite Rowe at this stage of the case to submit additional argument on the technical procedural issues now facing the Court would only result in further delay.

**\*2** We therefore turn to the issues presented by the R & R, which lead us into the familiar but nevertheless intricate procedural labyrinth of habeas corpus law.

I. *Ineffective Assistance*
In his R & R, Judge Ellis concludes that although Rowe did claim raise a claim of ineffective assistance on his direct appeal, his present ineffective assistance claim nevertheless should be deemed unexhausted because it rests on a different set of facts than those presented to the state court. R & R at 7–9. That conclusion is correct. For a habeas court to reach the merits of an ineffective assistance claim, "all of [the] allegations must have been presented to the state

courts, allowing them the opportunity to consider *all* the circumstances and cumulative effect of the claims as a whole." *Caballero v. Keane,* 42 F.3d 738, 740–41 (2d Cir.1994) (internal quotation marks and citation omitted). The whole point of the exhaustion requirement is to permit the state court a fair opportunity to consider a defendant's claims before a federal court undertakes to review the state court judgment. If the state court has not had such an opportunity to assess counsel's performance, because the claim of ineffective assistance that was made on direct appeal did not present a complete picture of the "all the circumstances" and the cumulative effect of the claimed derelictions, then the purpose of the exhaustion requirement has not been served. It is true that "dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claim presented to the state courts." *Caballero,* 42 F.3d at 741. Where, however, the new allegations do "fundamentally alter" the claims presented to and rejected by the state courts, it follows that the new claim has not been properly exhausted.

In this case, Rowe argued on direct appeal that his trial counsel was constitutionally ineffective, and therefore should have been dismissed, because (1) he insisted that he could not represent Rowe effectively due to a breakdown in communication, and (2) he acted against Rowe's interests by repeatedly telling the court, outside the presence of the jury, that the evidence against Rowe was overwhelming and he had no chance of acquittal. R & R at 3–4. Before this Court, Rowe argues that trial counsel was ineffective because (1) he failed to contact witnesses that Rowe claimed would have attested to his innocence, and (2) he failed effectively to cross-examine the State's witnesses concerning inconsistencies in their testimonies. As Judge Ellis correctly concludes, these new factual allegations are not "merely supplemental" to those raised on direct appeal, but could "fundamentally alter" his ineffective assistance claim. *See Caballero,* 42 F.3d at 741. The claims presented in this Court are not only based on different facts than those presented on direct appeal, but one of those claims also rests on facts outside the record. Under these circumstances, the new allegations of ineffective assistance present facts and legal theories that have not been presented to the state courts, and thus have not been exhausted.

**\*3** Rather than recommend that Rose be required to exhaust this entire claim, however, the R & R proceeds to bifurcate Rowe's ineffective assistance claim into two separate subclaims, one based on failure to contact witnesses and the other based on ineffective cross-examination. The R & R concludes that the former subclaim, because it is based on evidence outside the trial record, may be raised in a motion to vacate the conviction pursuant to New York Criminal Procedural Law § 440.10, but that the latter subclaim would be collaterally barred by operation of N.Y.Crim. P.L. § 440.10(c)(2), because it is based on evidence contained in the trial record but was not raised on direct appeal. Judge Ellis therefore recommends that the cross-examination claim should be deemed exhausted but procedurally defaulted and dismissed with prejudice. R & R at 9–10.

This approach, however, would result in the distortion of Rowe's ineffective assistance claim. Such a claim by its nature requires a court to " 'consider [ ] all the circumstances' " and "to look at the 'totality of the evidence before the judge and jury' " to determine whether counsel's representation was deficient. *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001) (quoting *Strickland v. Washington,* 466 U.S. 668, 688–89, 695–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Stouffer v. Reynolds,* 168 F.3d 1155, 1163–64 (10th Cir.1999). Because a claim of ineffective assistance of counsel "can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together." *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (citing *Strickland v. Washington,* 466 U.S. 668, 695–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). It therefore would be particularly inappropriate to conclude that Rowe has procedurally defaulted certain aspects of his ineffective assistance claim based on an artificial division of that claim which would distort the application of the *Strickland* standard. *Cf. United States v. Arvizu,* —— U.S. —— — ——, 122 S.Ct. 744, —— L.Ed.2d — — — —, 2002 WL 46773, slip op. at 8 (Jan. 15, 2002) (rejecting, as inconsistent with "totality of the circumstances" standard for evaluating constitutionality of brief investigatory stops under Fourth Amendment, a "divide-and-conquer analysis" by which the court evaluated and rejected several individual factors in isolation from each other). Indeed, no actual state court judgment has found Rowe to be collaterally barred from raising any aspect of his ineffective assistance claim in state court, and it seems unlikely that a state court would whittle away the factual basis for Rowe's claim in the face of *Strickland* 's clear mandate to "consider[ ] all the circumstances" and the "totality of the evidence" when evaluating claims of ineffective assistance

of counsel. [1] *Strickland,* 466 U.S. at 688–89, 695–96; *Lindstad,* 239 F.3d at 199.

The Court therefore declines to follow the R & R's recommendation that part of Rowe's ineffective assistance claim be dismissed with prejudice as procedurally defaulted. Rather, the Court concludes that the entire ineffective assistance claim presented on habeas has not been properly presented to the state courts, and must be exhausted there before being available for federal habeas review. [2]

## II. *Failure to Prove Guilt Beyond a Reasonable Doubt*

**\*4**  The R & R also recommends that Rowe's second claim, that his guilt was not proven beyond a reasonable doubt, should be deemed procedurally defaulted and, since he has failed to show cause and prejudice for the default, dismissed with prejudice. R & R at 10 (citing N.Y.Crim. P.L. § 440.10(2)(c)). There is no question that Rowe has failed to exhaust state remedies with respect to that claim—he did not raise the issue on direct appeal, and he has not as yet sought post-conviction relief from any state court. Nevertheless, the R & R essentially recommends that the claim be deemed exhausted but procedurally defaulted because a state court, as an adequate and independent state law ground for dismissal, would likely find the claim collaterally barred under N.Y.Crim. P.L. § 440.10(2)(c). R & R at 10; *see also* *Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. 2254(b), we deem the claims exhausted."). This recommended characterization of Rowe's second claim appears to be consistent with Second Circuit precedent, which permits a court to deem a claim to be exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001); *see also* *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997); *Bossett,* 41 F.3d at 829. *But cf.* *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) (holding that unexhausted claim must be presented to state court notwithstanding likelihood of procedural bar under state law, since federal courts "have no authority to declare as a matter of state law that an appeal from the denial of [state court motion for collateral relief] is unavailable"); *Bloomer v. Costello,* 2001 WL 62864, at \*3–\*5 (S.D.N.Y. Jan.24, 2001) (discussing tension within Second Circuit precedent between

*Pesina* and subsequent case law). It is therefore quite possible that the second claim is ripe for decision in federal court.

Moreover, the record is adequate to permit denial of this claim on the merits. The evidence at Rowe's trial was amply sufficient to permit a reasonable jury to find defendant guilty beyond a reasonable doubt. An undercover police officer testified that he personally bought two vials of crack from Rowe for ten dollars, in broad daylight, and that Rowe had taken the vials from a black film canister hidden in a garbage can. This testimony was corroborated by a second officer who testified that she observed the undercover in conversation with Rowe. The undercover also radioed an accurate description of the crack seller's physical appearance and clothing to a backup team, which promptly arrested Rowe, who perfectly met the description, leaving the scene of the sale in possession of the buy money. A member of the back up team testified that as he prepared to search Rowe after his arrest, he observed a black film canister containing ten vials of crack at Rowe's feet.

**\*5**  Rowe argues here, as he argued at trial, that he never sold drugs to the undercover officer, and that the testimony of the officers was false. But it is not for a federal court on habeas review to second-guess the jury's determination of whom to believe. This Court's role is limited to deciding whether the prosecution's evidence, if believed by the jury, would be sufficient to establish guilt beyond a reasonable doubt. Beyond question, it was.

## III. *Disposition*

If Rowe's first claim is unexhausted and his second claim is deemed exhausted but procedurally defaulted or without merit, then Rowe's is a so-called "mixed petition" containing both unexhausted and (constructively) exhausted claims. *See* *Zarvela v. Artuz,* 254 F.3d 374, 378 (2d Cir.2001). District courts presented with mixed petitions have three basic options. If the petition is "hopeless," in that it is "so patently meritless that [it is] destined for denial," *Jones v. Senkowski,* —— F.3d ——, 2001 WL 1230800, at \*4 (2d Cir. Oct.5, 2001), the district court may exercise limited discretion to deny the petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Plainly, denial of Rowe's petition on the merits under 28 U.S.C. § 2254(b)(2) is not an option in this case. Given that the primary claim of counsel's failure to investigate rests on facts outside

the record, it cannot be said that his unexhausted claim of ineffective assistance of counsel is "so patently meritless that [it is] destined for denial." *Jones,* 🚩 2001 WL 1230800, at *4. [3]

That leaves the Court with two options: "either [to] dismiss the petition [in its entirety] without prejudice, or, if appropriate, retain jurisdiction over the petition and stay further proceedings pending the exhaustion of state remedies." *Id.* at *2; 🏳 *Zarvela,* 254 F.3d at 382; *see also* 🏳 *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2130, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring); *Newton v. Coombe,* No. 95 Civ. 9437, 2001 WL 799846, at *9 (S.D.N.Y. July 13, 2001). The former option normally requires the district court to "include in the dismissal order an appropriate explanation to a *pro se* petitioner of the available options and the consequences of not following required procedures," such as the effect of the one-year limitations period set forth in 🏳 28 U.S.C. § 2244(d), while the latter option requires the district court's stay to be "explicitly condition[ed] upon ... the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." 🏳 *Zarvela,* 254 F.3d at 381–82. While the choice between these two options is "generally" to be left to the discretion of the district court, 🏳 *id.* at 382, in some instances—including those "where an outright dismissal 'could jeopardize the timeliness of a collateral attack'' under the one-year limitations period in 🏳 28 U.S.C. § 2244(d)—staying the petition and retaining jurisdiction pending exhaustion "will be the only appropriate course." *Id.* at 380 (*quoting* 🔶 *Freeman v. Page,* 208 F.3d 572, 577 (7th Cir.2000)).

 **\*6** In this case, *Zarvela* compels the conclusion that the only appropriate course of action is conditionally to stay Rowe's petition and retain jurisdiction pending exhaustion of state remedies. On April 7, 1999, leave to appeal Rowe's state court

conviction to the New York Court of Appeals was denied. *People v. Rowe,* 93 N.Y.2d 902 (1999). Rowe's conviction then became final on July 6, 1999, when the ninety-day period to seek direct review from the Supreme Court of the United States by petition for a writ of certiorari expired. See 🏳 *Valverde v. Stinson,* 224 F.3d 129, 132 (2d Cir. 2000); 🏳 28 U.S.C. 2244 (d)(1)(A). He acted with dispatch to file the instant federal habeas petition on December 22, 1999-- almost 200 days before the end of the one-year limitations period set forth in 🏳 28 U.S.C. § 2244(d). However, the limitations period has not been tolled during the considerable period of time—over two years—in which Rowe's habeas petition has been pending before this Court. 🏳 *Duncan,* 121 S.Ct. at 2130. [4] Dismissal of Rowe's petition would therefore " 'jeopardize the timeliness of a collateral attack,'' 🏳 *Zarvela,* 254 F.3d at 380, since it would *immediately* render Rowe time-barred from filing any subsequent federal habeas petition that renews the claims asserted here.

Accordingly, it is hereby ORDERED that:

All proceedings on this petition for habeas corpus are stayed, to give petitioner an opportunity to exhaust his state remedies on the ineffective assistance claim, subject to the conditions (1) that petitioner files a motion to vacate his conviction in state court, pursuant to New York Criminal Procedural Law § 440.10, within 30 days of this order, and (2) that petitioner returns to this court to renew his petition within 30 days after the state courts have completed their review of his claims. If petitioner fails substantially to fulfill both of these conditions, the Court will vacate the stay *nunc pro tunc* as of the day of this order, and his petition may be dismissed. *See Zarvela,* 254 F.3d 381–82.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 100633

**Footnotes**

1   N.Y.Crim. P.L. § 440.10(2)(c) requires denial of a petitioner's motion to vacate a judgment if "sufficient facts appear on the record ... to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion," but the petitioner "unjustifiabl [y]" failed to raise that ground or issue on direct appeal. That rule cannot bar consideration of Rowe's allegation that his trial counsel was ineffective in failing to contact witnesses, which could not have been raised on direct appeal. Once that allegation has properly been presented, it no longer can be said that "sufficient facts appear on the record" to have permitted review of Rowe's entire ineffective assistance claim without running afoul of *Strickland* 's totality-of-the-circumstances-based standard.

2   The merit of Rowe's ineffective assistance claim turns significantly on matters outside the present record, including what witnesses Rowe claims could have testified in his behalf, what they would have said at trial, what Rowe told counsel about these witnesses, and what efforts if any counsel made to locate those witnesses (with what result). Rowe's petition addresses none of these issues, asserting only in the most summary way that his attorney told him he "would contact my witnesses," but that Rowe later learned that "he never did." Pet. at 5. His reply papers, however, provide considerable information about these matters. Reply dated 7/22/00, at 4–5. In any state court motion, Rowe would be well advised to provide as much detail as he can about the potential testimony of these witnesses, ideally with supporting affidavits from the witnesses (if they can be found at this late date).

3   Nor is it clear that the R & R's proposed variant on this approach—dismissing the petition in part without prejudice, as unexhausted, and in part with prejudice, as (constructively) exhausted but (likely) procedurally defaulted—is a viable option. That approach certainly would not have been permitted prior to the 1996 amendments to 28 U.S.C. § 2254. *See Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (mixed petition must be dismissed, without prejudice, in its entirety, "leaving the prisoner with the choice of returning to state court to exhaust his claims or amending or resubmitting the habeas petition to present only exhausted claims to the district court"). Nor does it appear to be authorized by the current version of § 2254(b)(2), which permits a habeas Court to deny a *petition*—not particular claims within that petition—on the merits, despite a failure to exhaust state remedies. In any event, the option suggested by the R & R does not seem particularly attractive. A denial of part of Rowe's petition for procedural default would constitute a disposition on the merits and, as such, would potentially prejudice any future petition for federal habeas relief—even on Rowe's unexhausted claim of ineffective assistance—under 28 U.S.C. § 2244(b)'s limitations on "second or successive" petitions. *See Aparicio,* 269 F.3d at 90; *Bloomer,* 2001 WL 62864, *4 n. 3.* This would hardly be fair to petitioner.

4   The petition was initially assigned to another judge of this Court, who in turn referred it to the magistrate judge for an R & R on March 8, 2000. It was fully submitted in August 2000; the R & R was eventually issued, as noted above, in December 2001; and petitioner's objections were filed on December 27, 2001, when the matter for the first time became ripe for decision.

---

**End of Document**                                     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 2670023
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Aaron VOYMAS, Petitioner,

v.

David UNGER, Superintendent, Respondent.

No. 10–CV–6045(MAT).
|
July 7, 2011.

**Attorneys and Law Firms**

Aaron Voymas, Attica, NY, pro se.

Paul B. Lyons, Office of New York State Attorney General, New York, NY, for Respondent.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

**\*1** Petitioner, Aaron Voymas ("Voymas" or "Petitioner"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's state custody arises from his conviction on charges of first degree rape and third degree sexual abuse in connection with his repeated acts of incest against his younger sister.

**II. Factual Background**

The victim, M.V., was born on March 19, 1985. T.148–49 (Numbers preceded by "T." refer to pages from the transcript of Petitioner's trial.). When M.V. was four or five years old, her parents, John Voymas and Deirdre Voymas (now Dye), divorced, and M.V. went to live with her father in Michigan for "a year or two." T.148–51. Subsequently, her mother regained custody of M.V., remarried, and the family, including M.V., her two older brothers, her mother, and her stepfather, moved from Michigan to Tonawanda, New York in Erie County. T.151. They later moved to four different locations in Canandaigua, New York.

M.V.'s two brothers, Petitioner and Adam Voymas, are approximately two and a half and five years older than M.V.,

respectively. When M.V. was around five years old, her brothers began to touch her inappropriately. T.149, 153–54. When she was about seven, both of her brothers "start[ed] being very forcible," "aggressive[ly]" abusing her. T.154–55. Her brothers would "[t]ake [her] pants off and [her] panties," "grab at [her] genitals," and "force their penises into [her] vagina." T.154–56. At first, M.V. "tried to fight it, fight it off ... [b]y trying to hold them back or push them off and kick them." (T.155–56). However, she was never able to prevent their assaults because both brothers were bigger than she was. T.155–56.

The abuse continued at the various locations to which M.V.'s family moved. T.155. M.V. recalled one incident in particular that occurred at their home on West Lake Road in Canandaigua when she was thirteen-years-old. T.156–57, 164, 190–91, 200. Her parents were not at home, and she was sitting on a bed playing a video game. Petitioner came up from behind her, pushed her down on her stomach, pulled her pants and panties down, and raped her from behind as he held her down. T.157–60, 191–92. M.V. pleaded with him to stop, but he ignored her and continued to penetrate her until he ejaculated. T.157–62, 192. She did not try to escape "because he was bigger than [M.V.] and ... it happened all the time, so [physical resistance] was pointless." T.160.

M.V. testified this rape took place in May of 1998, when she was in eighth grade. T.185–86. She was able to determine that the rape occurred between March 19, 1998, and late June 1998, when she was thirteen and Petitioner was fifteen, because she specifically remembered that it took place in the springtime, after her 13th birthday (i.e., March 19th), on the same day that her brother, Adam, had also molested her, and shortly before Adam graduated from high school in June. T.162–64. M.V. also remembered that it took place at the house on West Lake Road, from which the family moved in July 1998. T.144–48, 164.

**\*2** M.V. described another incident which occurred at the family's Parrish Street house in Canandaigua. T.165. Petitioner, who was then sixteen, grabbed M.V.'s breasts and fondled her vagina over her pants for a "few minutes." T.165–67, 200–02, 212. M.V. was thirteen or fourteen at the time. She remembered the event because it was the last time that Petitioner sexually abused her. T.165–68. M.V. did not physically resist because resistance "was pointless," as Petitioner "always did it and got away with it and he was bigger than [M.V.]." T.167. However, because M.V. "was standing there rigid and still ... [Petitioner] knew that it wasn't

consensual." She surmised "he felt guilty about it because ... he just stopped" and said "something like ... 'I know this has been wrong and I'm not going to do it anymore.' " T.167–68.

In May 1998, M.V. was being treated with medication for depression, and the doctors "were always switching medications because nothing was working." T.187–88. M.V. acknowledged that she was "a disciplinary problem in school" beginning in the eighth grade. T.188. She would often deliberately misbehave at school in order to receive after-school detention, because the extra hour at school "would lessen the likelihood [that she] would be raped and molested" by her brothers. T.213–14.

Soon after she turned eighteen, M.V. got married and moved to Texas with her husband. T.168–70. While in counseling, she eventually revealed details regarding the repeated sexual abuse by her brothers. T.171. As a result of those conversations, she contacted the authorities in Texas and later in Canandaigua. T.171–72.

It was suggested that M.V. separately call both Petitioner and her brother Adam and record their conversations. T.172–73, 198–99. On January 11, 2005, M.V. telephoned Petitioner, who was stationed at an army base in Kentucky, and recorded the call using equipment supplied by the Abilene Police Department. T.172–74. M.V. was not able to record the entire call, because "the tape ran out and [she] didn't know how to flip it over," but only a minute or two at the end of the conversation went unrecorded. T.175, 199–200. The audiotape was played in court, and the jury was provided with a transcript of the recording. The trial court instructed the jury that the transcript was "not evidence" and was only provided to "assist [the jury] in listening to the actual tape recording." T.180–82.

During the recorded conversation, Petitioner admitted that he first started "having sex" with M.V. when they lived in Tonawanda, New York (i.e., the town where the family first lived after moving from Michigan when M.V. was six or seven years old). He stated that he realized that what he did to M.V. was wrong and pointed out that he was no longer abusing M.V. He apologized for what he had done but advised her to "[a]ccept that you got raped" and "that your perception of your brothers is always going to be that they're scum ....." Court Exhibit B at 2–4, 9, 10. Petitioner acknowledged that, during the time he was raping M.V., he was, in fact, "scum." *Id.*

**\*3** On February 10, 2005, detectives from the Canandaigua Police Department traveled to the Kentucky Army base where Petitioner was stationed. T.219–21, 241. Petitioner waived his rights and gave a written statement confessing to having had "sexual intercourse" with his sister "between six and eight times" at several locations beginning when she was about seven years old. T.234–38. In the first incident, when M.V. was approximately seven and Petitioner was approximately nine, both Petitioner and his brother had "sexual intercourse" with M.V. T.234–35. Petitioner also acknowledged one particular incident in which he had "[s]exual intercourse" with M.V. at the family's West Lake Road house, during which M.V. "[m]ost likely" asked petitioner to stop. T.236–37. Petitioner further stated that his "sexual relationship" with M.V. ended when Petitioner was approximately sixteen. T.236.

Petitioner, 210 pounds and 5′11″-tall at the time of trial, took the stand and denied having had a sexual relationship with M.V. He also denied knowing whether his brother Adam had molested her. T.267, 323, 346. He recalled the January 11, 2005 telephone conversation with M.V. that she had recorded. T.268, 270. He claimed, however, that he had been "groggy" during the conversation because he had been roused from sleep to answer the call. T.270, 326, 333, 337, 347. Petitioner also claimed, among other things, that M.V. had earlier told him that in 2004 she had been raped in Abilene, Texas, so in the recorded conversation he had "tr[ied] to help her with" that incident. T.272, 347, 357–58. Petitioner claimed that he had apologized to M.V. during the call not because he had actually done anything wrong, but because it was his "understanding that she thought [he] had wronged her." T.275, 345.

Petitioner insisted that he did not remember making various statements recorded on the audiotape. T.274–79. He claimed that during the call, he had "gotten wrapped up in [M.V.'s] wording and did not pay attention to it." T.281–82, 349–50, 356, 359–61. He also claimed that his sister "tricked" him into making certain admissions. T.361–62.

When Petitioner finally realized that M.V. was accusing him of having had "sexual experiences" with her, he thought she was "delusional" and fabricating these allegations. T.352–53. Petitioner explained that he did not deny her accusations because his "only understanding of delusional people is you can't reason logic with them ...." T.353. Petitioner stated that he was just "playing along," trying to "placate" her. T.353–54, 357.

With regard to his written statement to the police, Petitioner testified that he had slept "[o]nly a little bit" on the night before his interview, and that his rights had not been read to him until after the statement was written. T.283–84, 289, 363–64. According to the detectives, Petitioner "did not appear tired" or "drowsy" at the time of the interview, and did not "complain about ... lack of sleep." T.250, 261. Moreover, Petitioner had brought his own food to the interview, and he conceded that the interviewers never touched him. T.371–72.

**\*4** Petitioner claimed that he signed the confession because he "became weary after being questioned" for "[o]ver an hour," and "just wanted to give [the police] the answers they were asking for." T.289–90, 292–94, 368, 371–75. He claimed that the police refused to "believe [him] when [he] told them the truth," so he gave them the answers that "[t]hey wanted." T.295–96, 298–311. He also claimed that he was "confused" and "rattled" during the interview. T.299–300, 374–77.

The jury disbelieved Petitioner's version of events and returned a verdict convicting him of all counts: first-degree rape, incest, and third-degree sexual abuse.

The court sentenced Petitioner, as a Juvenile Offender, to a term of three to nine years imprisonment on the rape count. The court dismissed the incest count.[1] Because Petitioner committed the sexual abuse crime while he was an adult (i.e., sixteen-year-old), the trial court determined that he should be sentenced as an adult, although, being less than eighteen, he was eligible for Youthful Offender status.

On appeal, the Appellate Division found that the trial court erred in failing to grant that part of Petitioner's omnibus motion seeking to dismiss the third count of the indictment, charging him with sexual abuse in the third degree, on the ground that it was facially defective in that it failed to set forth a time interval that reasonably served the function of protecting defendant's constitutional right to be informed of the nature and cause of the accusation. *People v. Aaron V.,* 48 A.D.3d 1200, 1201, 850 N.Y.S.2d 790, (App.Div. 4th Dept.2008) (citations omitted). The Appellate Division held that the 12–month period was unreasonable in view of the fact that the victim was thirteen- or fourteen-years-old during that time period and thus was capable of discerning, if not exact dates, at least seasons, school holidays, birthdays, or other events which could establish a frame of reference to assist her in narrowing the time spans alleged. *Id.* (citations omitted). The remaining convictions were affirmed. *Id.*

### III. Discussion of the Petition

#### A. Defective Indictment

Petitioner argues that the indictment under which he was charged was not specific enough to meet the Sixth Amendment guarantee that a defendant be "informed of the nature and cause of the accusation" against him. In particular, Petitioner alleges that the indictment was defective in that it contained a bare recitation of the language of the statute; alleged a time frame of 4½ months on the rape charges and one year on the sexual abuse charge; and did not specify which alleged acts in the rape charge satisfied the elements of "forcible compulsion."

"An indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet." *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975) (citation omitted). To accomplish this, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime[.]" *Id.* (citations omitted). Challenges to state indictments will merit habeas corpus relief only in the exceptional case where the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime. *Scott v. Sup., Mid–Orange Corr. Facility,* No. 03 Civ. 6383(RJD)(LB), 2006 WL 3095760, at \*6 (E.D.N.Y. Oct. 31, 2006) (citing *Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y.1988)).

**\*5** Petitioner's specific complaint about the rape count's time-frame is meritless as a matter of Federal Constitutional law and New York law. Although the indictment specified a period of time-rather than a specific date-in which Petitioner committed the rape, the indictment met the constitutional standards referred to above. *Accord, e.g., Rodriguez v. Hynes,* CV–94–2010 (CPS), 1995 WL 116290, at \*4 (E.D.N.Y. Feb. 27, 1995) ("[W]here time is not an essential element, it suffices to state the time in approximate terms, as long as such a statement is reasonable.") (citing *United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.1983), *cert. denied,* 464 U.S. 840 (1983)). The 4½-month time-period on the rape charge was not unreasonable especially where, as here, the complaining victim was a child. *See Rodriguez,* 1995 WL 116290, at \*4 (dismissing habeas claim alleging indictment insufficient due to lack of specific date; "[c]onsidering the

fact that young victims often do not remember the exact date of when an alleged offense occurred, the time spans in the indictment [charging sexual abuse of a minor] are not unreasonable"); *see also* Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir.2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.") (collecting cases); Fawcett v. Bablitch, 962 F.2d 617, 619 (7th Cir.1992) (rejecting a due process challenge to an indictment that set forth a six-month period of time during which the defendant allegedly sexually abused a minor child, and finding that the indictment "afforded [the defendant] notice sufficient to permit him to defend against the charge").

Furthermore, there is no requirement that the statutory definition of "forcible compulsion be set forth in the indictment. New York Penal Law § 130.00 defines the phrase and thus puts the parties on notice as to what constitutes "forcible compulsion" under the law when it is alleged in an indictment. "Forcible compulsion" is not an element of the crime which must be set forth in the indictment. *Best v. Kelly,* CV–88–0530, 1998 WL 76621, at *2 (E.D.N.Y. July 7, 1988) (dismissing habeas claim that indictment failed to specify two allegedly essential elements, that the sexual intercourse was without consent, and that the lack of consent resulted from forcible compulsion).

### B. Erroneous Admission of Uncharged Crimes

Petitioner asserts that his due process rights and Sixth Amendment right to present a defense were violated because (1) M.V., the victim, testified to the grand jury that Petitioner's brother committed acts similar to those Petitioner committed, although M.V. stated that Petitioner was not aware of his brother's acts; (2) in pretrial proceedings and at trial, the prosecution referred to, and the court admitted, uncharged acts by both Petitioner and his brother "that allegedly occurred prior, and unconnected to, the charges of the indictment"; and (3) the court failed to determine whether the prejudicial effect of such evidence outweighed its probative value.

**\*6** Petitioner's claim regarding evidence heard by the grand jury is not cognizable on federal habeas review. *See, e.g., Lopez v. Riley,* 865 F.2d 30, 32–33 (2d Cir.1989) (holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in a federal court").

Although prior uncharged acts by Petitioner and his brother were occasionally referred to during certain pretrial proceedings, including at a joint suppression hearing, Petitioner has failed to explain how such references could have violated his constitutional rights at trial or unfairly prejudiced his case.

Here, Petitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment. *Accord Parker v. Woughter,* 09 Civ. 3843(GEL), 2009 WL 1616000, at *2 (S.D.N.Y. June 9, 2009). To the extent that it can be assumed that in some circumstances the admission of such evidence can be so significant as to deny a defendant a fair trial, that cannot be the case here. The Appellate Division held that evidence of his prior sexual misconduct with the victim, his sister, was properly admitted because that evidence was relevant in establishing that 'defendant's sexual act [was] perpetrated against the victim by forcible compulsion.' " *People v. Aaron V.,* 48 A.D.3d at 1201, 850 N.Y.S.2d 790 (citations omitted). New York case law is well-settled that "evidence of a defendant's prior abusive behavior toward a complainant may be admissible to prove the element of forcible compulsion in a rape case," *People v. Cook,* 93 N.Y.2d 840, 841, 688 N.Y.S.2d 89, 710 N.E.2d 654 (N.Y.1999) (citations omitted), to establish intent, *People v. Roman,* 43 A.D.3d 1282, 1282, 842 N.Y.S.2d 640 (App.Div. 4th Dept.2007), and to explain the victim's failure to make a prompt complaint, *People v. Chase,* 277 A.D.2d 1045, 1045, 716 N.Y.S.2d 486 (App.Div. 4th Dept.2000).

Finally, Petitioner claims that the court erred by not determining, on the record, whether the prejudicial effect of the prior-conduct evidence outweighed its probative value.

During its *Molineux*[2] ruling, the court observed that, the previous day, it had concluded Petitioner's brother's trial, in which it had made the same *Molineux* determination involving the similar facts. The court viewed that ruling as precedential since it was based on review of the same case law and very similar facts, and also involved the same rationale for admissibility. Notably, Petitioner did not object when the court did not repeat its entire *Molineux* ruling.

In any event, "in a habeas petition, the petitioner has the burden of proof and cannot rely on the mere absence

of evidence to the contrary of his claim. The petitioner must show evidence that the judge abused (or refused to exercise) his discretion. This [petitioner] has not done, and the argument that the court did not properly determine the admissibility of petitioner's prior bad acts therefore fails." *Smith v. Riley,* 09–CV–3094, 1995 WL 1079778, at *10 (E.D.N.Y. Jan.26, 1995).

### C. Erroneous Denial of a Continuance
 **\*7** Petitioner claims that the court improperly denied defense counsel's request for a postponement of trial to prepare a defense. When a denial of a continuance forms the basis for a habeas claim, the petitioner must show not only that the trial court abused its discretion, but also that the denial was so arbitrary and fundamentally unfair that it violated constitutional principles of due process. *See* 📖 *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) ("[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.") (citation omitted).

As Respondent argues, Petitioner's allegations are contradicted by the record. The only mention of a trial date at either of the hearings cited by Petitioner occurred during the January 30, 2006, hearing, at which the trial court stated that it was "planning on commencing the trial" on February 1, 2006 (the date trial ultimately commenced), and defense counsel acquiesced by stating, "[v]ery good." Thus, it does appear that there was any request for a continuance, much less a showing by Petitioner that one was necessary.

### D. Denial of the Equal Protection of the Laws
Petitioner claims that his equal protection rights were violated by (1) the trial court's denial of his motion to adjudicate him as a Youthful Offender on the rape count; and (2) the refusal of the Appellate Division and Court of Appeals to address the issue.

This claim is not cognizable on Federal habeas review. Under New York law, "[t]he decision whether to grant youthful offender status to an eligible youth generally 'lies within the sound discretion of the sentencing court.' " *People v. Victor J.,* 283 A.D.2d 205, 206, 724 N.Y.S.2d 162 (App.Div. 1st Dept.2001) (citation omitted). "Denial of youthful offender adjudication does not provide a basis for

habeas relief, because 'it is well established that the United States Constitution grants no independent due process right either to youthful offender treatment or to any particular procedure for denying it, so long as the trial judge imposed a sentence that was lawful under state law.' " *Murphy v. Artus,* 07 Civ. 9468, 2009 WL 855892, at *7 (S.D.N.Y. Apr.1, 2009) (quoting *Auyeung v. David,* 00 Civ. 1353, 2000 WL 1877036, at *3 (S.D.N.Y. Dec.26, 2000)). Here, because "it is undisputed that [the trial court] considered youthful offender adjudication," Petitioner's claim is not cognizable on federal habeas review. *Murphy,* 2009 WL 855892, at *7.

### E. Legal Insufficiency of the Evidence
Petitioner claims that his conviction was based on legally insufficient evidence because the prosecution failed to prove beyond a reasonable doubt (a) that the rape was committed by "forcible compulsion," i.e., by physical force or the threat of immediate death or injury; (b) that Petitioner committed the acts in the time frames alleged in the indictment; and (c) that "specific acts or situations [were] attributable to" Petitioner, rather than "allegations of prior uncharged, unconnected conduct."

 **\*8** As Respondent argues, the claim is procedurally barred because the Appellate Division relied on adequate and independent state law grounds to dismiss it-namely, that Petitioner presented only a "general motion to dismiss" at the close of the People's case; and Petitioner failed to renew his motion after presenting evidence. *See* 📖 *Harris v. Reed,* 489 U.S. 255, 260–61, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (Federal habeas corpus review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," such when the state court "explicitly invokes a state procedural bar rule as a separate basis for decision."). It is well-settled under New York law that a defendant must alert the trial court to the specific basis for his dismissal motion in order to preserve an appellate claim for insufficiency of the evidence. *E.g.,* 📖 *People v. Gray,* 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (N.Y.1995).

Although only a "firmly established and regularly followed state practice," 📖 *James v. Kentucky,* 466 U.S. 341, 348–49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984), may be deemed adequate to prevent subsequent review by a federal court, the New York contemporaneous objection rule applied by the Appellate Division in Petitioner's case-that a motion to

dismiss must alert the trial court to the specific deficiency alleged, and that any such motion must be renewed at the close of defendant's case-has been recognized as just such a firmly established and regularly followed rule. *E.g., Mills v. Poole,* 06 Civ. 00842, 2008 WL 2699394, at *10–12 (W.D.N.Y. June 30, 2008).

Procedural default will "bar federal habeas review of the federal claim, unless the ... petitioner can show 'cause' for the default and 'prejudice attributable thereto,' " or demonstrate that "failure to consider the federal claim will result in a 'fundamental miscarriage of justice.' " *Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted). Petitioner has offered no "cause" for the failure to preserve his insufficiency claim, as he has not asserted an ineffective trial counsel claim in state court or in the instant petition. There is also no prejudice shown, because Petitioner's insufficiency-of-the-evidence claim is meritless. Although the Appellate Division found the sufficiency of the evidence claim unpreserved, the court did find that the verdict was not against the weight of the evidence. *People v. Aaron V.,* 48 A.D.3d at 1201, 850 N.Y.S.2d 790. "The appellate court found that the weight of the evidence supported [petitioner's] conviction so, *a fortiori,* his conviction was supported by legally sufficient evidence." *Horne v. Perlman,* 433 F.Supp.2d 292, 300 (W.D.N.Y. May 23, 2006); *see also People v. Danielson,* 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480, 880 N.E.2d 1 (N.Y.2007) ("Necessarily, in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt.").

**\*9** In his Traverse (Docket No. 19), Petitioner has attempted to demonstrate that he is actually innocent so as to satisfy the "fundamental miscarriage of justice" exception and establish a "gateway" through which his procedurally defaulted claim may pass. *See Schlup v. Delo,* 513 U.S. 298, 325, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The *Schlup* court has circumscribed the type of evidence on which an actual innocence claim may be based and articulated a demanding standard that petitioners must meet in order to take advantage of the gateway. *E.g., Doe v. Menefee,* 391 F.3d 147, 161 (2d Cir.2004). The petitioner must support his claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence-that was not presented at trial [,]" *Schlup,* 513 U.S. at 324. In light of *Schlup* 's explicit requirement of reliability, "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Doe v. Menefee,* 391 F.3d at 161 (citing *Schlup,* 513 U.S. at 327–28). If the district court determines that the new evidence is reliable, the next step is for the court to consider the petitioner's claim of actual innocence "in light of the evidence in the record as a whole, including evidence that might have been inadmissible at trial." *Id.* The standard articulated in *Schlup* "allows the reviewing tribunal also to consider the probative force of relevant evidence that was excluded or unavailable ...." 513 U.S. at 327 (citation omitted).

The evidence proffered here fails to satisfy the demanding *Schlup* criteria. Petitioner and his mother, Deirdre Dye, contend that certain child support records demonstrate that he left New York State on June 7, 1998, and could not have committed the rape as charged. The Court agrees with Respondent that the victim's testimony is not inconsistent with Petitioner's alleged departure from New York on June 7, 1998, and the brother's graduation in late June 1998. The victim testified that the rape took place in May 1998, after her thirteenth birthday (i.e., March 19, 1998). She also said that the rape by Petitioner it occurred in the springtime, on the same day that her other brother had molested her, and shortly before the other brother graduated from high school in June 1998.

It bears emphasizing that Petitioner's alleged alibi evidence does not refute Petitioner's signed, voluntary confession, or the evidence of the tape-recorded telephone call between Petitioner and the victim in which Petitioner explicitly admitted to raping her.

Petitioner's mother also states in her affidavit that she took her daughter to a gynecologist for a suspected yeast infection in November 1998, some months after the last alleged incident of abuse. The doctor's office advised her to schedule annual exams when her daughter became sexually active. Petitioner contends that if M.V. in fact had been raped (i.e., was sexually active), then the office would not have made this comment and would have had the mother begin scheduling annual exams. Assuming that doctor's office made this comment, it hardly proves that the repeated acts of rape and molestation

did not occur. Tellingly, Petitioner has not submitted any of the victim's medical records to substantiate his claims.

**\*10** In sum, the new evidence offered by Voymas does not convince this Court that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327. Therefore, he cannot satisfy the *Schlup* actual innocence standard so as to demonstrate that "fundamental miscarriage of justice" will occur should the Court decline to consider the procedurally defaulted claim.

### E. Denial of Equal Access to the Courts

Petitioner claims that he was denied "access to the courts" because (1) after petitioner's conviction was affirmed on direct appeal, the New York Court of Appeals ignored Petitioner's letters of inquiry regarding his leave application; (2) he was refused leave to appeal the denial of his C.P.L. § 440.20 motion; and (3) he was not granted a hearing in his state collateral proceedings.

Petitioner has failed to establish that he was prejudiced in any way by the Court of Appeals' delay in responding to his letters, assuming such a delay actually took place.

Turning next to the denial of leave to appeal his C.P.L. § 440.20 motion, Petitioner has not shown that further review by the Appellate Division was warranted. Petitioner's motion alleged that because he was sentenced as a Youthful Offender on the misdemeanor conviction of third degree sexual abuse, he was also required to be sentenced as a Youthful Offender rather than a Juvenile Offender on the top count, rape in the first degree. There were several unassailable grounds for denial of this motion by the trial court. First, although characterized as a C.P.L. § 440.20 motion to set aside his sentence, it was seeking an order pursuant to C.P.L. § 440.10 setting aside the judgment on the count of rape in the first degree, and replacing it with a Youthful Offender adjudication. Accordingly, the trial court found that because the issue could have been raised on Petitioner's direct appeal, the motion was required to be summarily denied pursuant to C.P.L. § 440.10(2)(c).

Moreover, the trial court found, because the conviction on the misdemeanor count of the indictment (third degree sexual abuse) was reversed on appeal, it was no longer a part of the

disposition of and therefore the question was moot. Finally, the trial court found that, even if the Youthful Offender adjudication was still viable, it would have the inherent power to correct errors made at the time of sentencing, such as by striking the Youthful Offender determination.

Petitioner's third contention, that his due process rights were violated by the failure to hold a hearing on his C.P.L. § 440.20 motion and *coram nobis* application, is without merit. All of the courts in this Circuit have held that Federal habeas relief is not available to redress alleged procedural errors in State post-conviction proceedings. *Jones v. Duncan,* 162 F.Supp.2d 204, 218–19 (S.D.N.Y.2001); *Diaz v. Greiner,* 110 F.Supp.2d 225, 235 (S.D.N.Y.2000).

### F. Ineffective Assistance of Appellate Counsel

**\*11** The Supreme Court set forth the test for such ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a demonstration(1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687. This standard applies in the context of appellate counsel's ineffectiveness. *E.g.,* *Hemstreet v. Greiner,* 491 F.3d 84, 89 (2d Cir.2007).

### 1. Appellate Counsel's Omission of Allegedly Meritorious Issues

In order to satisfy the first prong of *Strickland,* it is not enough for a petitioner to show that appellate counsel omitted a colorable argument. Counsel need not raise every nonfrivolous claim, but rather may winnow out weaker arguments on appeal and focus key issues in order to maximize the likelihood of success. *Smith v. Robbins,* 528 U.S. 259, 288 756, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (citing *Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). A petitioner instead must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000) (citing *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994)).

Construing the *pro se* petition liberally, Petitioner's allegations do not demonstrate that he was deprived of constitutionally effective assistance on direct appeal.

In particular, given that Petitioner raised insufficient-indictment claim in his *pro se* supplemental brief on direct appeal, he cannot claim prejudice on grounds that appellate counsel did not raise the same claim. *See Abdurrahman v. Henderson,* 897 F.2d 71, 75 (2d Cir.1990) ("Abdurrahman recognizes that the motion to suppress the weapon was denied after a full and fair hearing and ultimately was affirmed by the appellate division after he raised the issue in a pro se supplemental brief ... [E]ven if these claims had been raised by an attorney instead of by Abdurrahman in his *pro se* supplemental brief, the outcome of the state appeal would not have been affected.") (citing *Strickland,* 466 U.S. at 694).

Furthermore, contrary to Petitioner's contention, appellate counsel did raise a *Molineux* claim in his appellate brief, arguing that the trial court erroneously admitted "propensity evidence" consisting of prior uncharged conduct of Petitioner and his brother.

Petitioner's appellate counsel submitted a 40–page brief on direct appeal to the Appellate Division asserting colorable grounds for reversal. Although appellate counsel overlooked a meritorious issue (i.e., the insufficiency of the indictment claim), Petitioner cannot demonstrate that he was prejudiced because the Appellate Division granted relief on the claim as presented in his *pro se* brief. The remaining arguments that Petitioner claims that appellate counsel should have made are uniformly without merit.

### 2. Failure to Advise Petitioner

**\*12** Petitioner argues that appellate counsel did not discuss with him strategies for the appeal or assist him drafting a *pro se* supplemental brief. This argument is meritless.

"An appellate attorney's failure to communicate with his or her client, by itself, does not constitute per se ineffective assistance of counsel." *McIntyre v. Duncan,* 03–CV–0523, 2005 WL 3018698, at \*3 (E.D.N.Y. Nov.8, 2005) (citing *Buitrago v. Scully,* 705 F.Supp. 952, 955 (S.D.N.Y.1989)); *accord Campbell v. Greene,* 440 F.Supp.2d 125, 152 (N.D.N.Y.2006). "Although it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that

his client wishes to pursue." *McIntyre,* 2005 WL 3018698, at \*3 (citing *Smith v. Cox,* 435 F.2d 453, 458 (4th Cir.1970), *vacated on other grounds by Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971)). "[T]he Supreme Court has made clear that it is appellate counsel exercising discretion, after a professional evaluation of the trial record, who controls the preparation of the appellate brief." *Warren v. Napoli,* 05 Civ. 8438, 2009 WL 2447757, at \*18 (S.D.N.Y. Aug.10, 2009) (citing *Jones v. Barnes,* 463 U.S. at 751). Therefore, Voymas' assertions that his appellate counsel failed to consult with him prior to filing the appellate brief and obtain his consent about which claims to raise, or failed to incorporate the arguments asserted by Petitioner in his *pro se* brief, do not, without more, establish that Voymas received ineffective assistance. *Accord, e.g., Campbell,* 440 F.Supp.2d at 152. Moreover, the Court has been unable to find any support for Petitioner's claim that counsel was required to assist him in drafting his supplemental *pro se* brief. To the contrary, given that appellate counsel was not required to consult with Petitioner regarding the claims to be submitted in the principal brief, appellate counsel *a fortiori* was not required to confer with Petitioner regarding his *pro se* submission.

### III. Petitioner's Motion to Appoint Counsel (Docket No. 17)

The Supreme Court has clearly held that prisoners have no constitutional right to counsel when bringing collateral attacks upon their convictions. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *accord Green v. Abrams,* 984 F.2d 41, 47 (2d Cir.1993). Rather, the appointment of counsel is a matter of discretion. *Wright v. West,* 505 U.S. 277, 293, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

In determining when a district court may appoint counsel under 28 U.S.C. § 1915(d) for indigents in civil cases, such as petitions for a writ of habeas corpus under 28 U.S.C. § 2254, the court first should "determine whether the indigent's position seems likely to be of substance." *Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997). Once it is determined that the claim meets the threshold merits requirement, the Court should consider a number of other factors, including (1) the nature of the factual issues the claim presents, and petitioner's ability to conduct an investigation of the facts; (2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented

to the fact finder; (3) petitioner's apparent ability to present the case; (4) whether the legal issues involved are complex; (5) whether appointment of counsel would lead to a quicker and more just determination of the case; and (6) petitioner's efforts to obtain counsel. *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986).

**\*13** Petitioner states that he requires legal assistance because he is a layman and unschooled in the law. However, he has not shown himself to be unable to present the facts relevant to disposition of his habeas petition or to understand his legal position. Similarly, he has not demonstrated that the legal issues in his case are so complicated as to require the assistance of an attorney, or that appointment of counsel would lead to a more just determination.

The Court finds that the interests of justice do not necessitate the appointment of counsel in this case, and Petitioner's motion for the appointment of counsel (Docket No. 17) is denied. The denial is with prejudice, given the Court's concomitant dismissal of his habeas petition on the merits.

## IV. Respondent's Motion to Strike Portions of Petitioner's Traverse and to Seal the Traverse (Docket No. 20)

### A. Motion to Strike Portions of the Traverse

Respondent has filed a motion to strike (Docket No. 2) portions of Petitioner's traverse, filed June 17, 2010, which attaches and relies upon certain exhibits that, as Respondent points out, were never presented to the state courts. Specifically, petitioner has included the affidavit of his and the victim's mother, Deirdre Dye, dated June 11, 2010; Petitioner's affirmation dated June 15, 2010, and certain other documents which Petitioner contends demonstrate his "actual innocence" of first degree rape.

The Court has considered Voymas' allegations of "actual innocence" in the Traverse insofar as they relate to his attempt to overcome the procedural default of certain habeas claims. However, the Court declines to consider any new "stand-alone" or "freestanding" claims of actual innocence or ineffective assistance of appellate counsel in his Traverse. Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts provides, in part, that "[t]he petition must ... specify all grounds for relief available to the petitioner." Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts. "In light

of this Rule, it has been recognized that a traverse is not the proper pleading in which to raise additional grounds for habeas relief." *Parker v. Duncan,* 03–CV–0759 (LEK/RFT), 2007 WL 2071745, at \*6 (N.D.N.Y. July 17, 2007) (citations omitted); *accord, e.g.,* *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994)); *Jones v. Artus,* 615 F.Supp.2d 77, 85 (W.D.N.Y.2009). District courts have held that habeas claims raised for the first time in a reply memorandum or traverse are not properly considered. *Parker,* 2007 WL 2071745, at \*6 (citing *Haupt,* 2005 WL 1518265, at \*2 n. 3) *Simpson v. United States,* 5:03–CV–691, 2005 WL 3159657 (N.D.N.Y. Nov.25, 2005) (declining to consider habeas claims "raised for the first time in [Petitioner's] Traverse").

In any event, a freestanding claim of innocence based on newly discovered evidence has never been a basis for federal habeas relief absent an independent constitutional violation occurring in the state trial. *Herrera v. Collins,* 506 U.S. 390, 398–99, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The *Herrera* court assumed for the sake of argument "that in a *capital* case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417 (emphasis supplied); *see also id.* at 427 (O'Connor, J., concurring).

**\*14** In *House v. Bell,* 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), a capital habeas case, the Supreme Court explained its precedent as implying at the least that *Herrera* requires more convincing proof of innocence than *Schlup* 's "gateway" actual innocence standard. *House,* 547 U.S. at 555. The Supreme Court declined to answer the question left open in *Herrera* of whether a habeas petitioner may bring a freestanding claim of actual innocence. Rather, the Supreme Court concluded, as in *Herrera,* that "whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it[,]" although he had satisfied the *Schlup* gateway standard.

Even assuming for the sake of argument that a freestanding actual innocence claim, without an underlying constitutional trial violation, is amenable to Federal habeas review in a non-capital case, the allegedly new evidence proffered in this case simply cannot satisfy the "extraordinarily high," 506 U.S. at 417, hypothetical *Herrera* standard. Because, as discussed above, Petitioner's new evidence falls short of the *Schlup*

standard, it necessarily fails the more stringent *Herrera* test. *See* House, 547 U.S. at 555.

### B. Motion to Seal the Traverse

Respondent has also moved (Docket No. 20) to seal Petitioner's Traverse dated June 17, 2010 (Docket No. 19) in accordance with N.Y. Civil Rights Law § 50–b for the protection of the victim's identity.

In an Order dated May 11, 2010, this Court placed under seal the state court records, including the trial transcripts, submitted by Respondent previously in this case. In accordance with this Order, Respondent's motion to seal (Docket No. 20) is granted.

### V. Conclusion

For the reasons stated above, Aaron Voymas' Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Voymas' Motion to Appoint Counsel Stay (Docket No. 17) is denied with

prejudice. Respondent's Motion to Strike Portions of the Traverse and Seal the Traverse (Docket No. 20) is granted in part. Specifically, the Court declines to consider new, unexhausted claims raised for the first time in this responsive pleading, and the entire Traverse is placed under seal. The motion is denied to the extent that the Court has considered Petitioner's claims of actual innocence insofar as they relate to the procedural default of his insufficiency-of-the-evidence claim.

Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal *in forma pauperis.*

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2670023

---

## Footnotes

1    Because the crime of incest was not one that would qualify for "juvenile offender" treatment, i.e., treatment as an adult, the incest count was required to be dismissed under New York Criminal Procedure Law ("C.P.L.") § 310.85

2    *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286 (1901) (evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime).

---

End of Document                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.